CHARLES THOMAS, ADMINISTRATOR, *vs.* MARY CASTLE
ET AL.

First Judicial District, Hartford, January Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A testator, who died in 1890, gave the residue of his property in trust for the benefit of his son, *W*, during the latter's life, with power in the trustee to draw on the principal if necessary for *W*'s comfortable support, and, if considered advisable, to pay the whole or any portion thereof to *W* upon approval of the Court of Probate. If *W* died before the trust property was expended, the balance was to go in fee to the lawful issue of his body then living, if any, otherwise to be " disposed of in accordance with the laws in regard to intestate estates." *W*, who was the testator's sole heir at law, died intestate in 1899, before the trust property was exhausted,

Thomas *v.* Castle.

leaving no wife or lineal descendant. In a suit to construe the will it was *held* : —

1. That the language of the will clearly limited the trust estate to one for *W*'s life.

2. That the gifts over upon *W*'s decease, if valid, were, so far as they related to real estate, contingent, alternate remainders in fee; while the personalty followed the same course in effect, since remainders therein, dependent upon a life estate, might be created by will.

3. That upon the death of *W* without issue this remainder, if a valid gift, became a vested one in those entitled to take the property.

4. That if the clause directing the disposal of the balance of the trust property in accordance with the laws relating to intestate estates, was to be understood as a declaration of intestacy, the property would on *W*'s death at once pass to his estate; if it was to be construed as expressing a gift under the will to the heirs at law of the testator as determined at *W*'s death, the attempted gift would be void as contravening the then existing statute against perpetuities, and the property would, as before, pass as intestate estate; and lastly, if interpreted as a testamentary gift to the general heirs at law of the testator existing at his death, the result would be the same, unless, indeed, *W* could be excluded by implication from taking as an heir—a course not warranted by the language of the will; and therefore in any event *W*'s administrator was entitled to the property as part of his estate.

Submitted on briefs January 8th—decided January 26th, 1904.

SUIT to determine the construction of the will of Orlando Lewis of Roxbury, deceased, brought to and reserved by the Superior Court in Litchfield County, *Elmer, J.,* upon a finding of facts, for the advice of this court.

The testator died in 1890, possessed of both real and personal estate not ancestral. His will, duly probated, after providing for the payment of his debts, funeral expenses, and certain legacies, contained the following pertinent provisions : —

"*Fourth.* All the remainder of my property of every description, both real and personal, of whatsoever the same may consist, or wherever it may be situated, I give in trust for the use and benefit of my son William E. Lewis, meaning hereby that my said son William E. Lewis shall be entitled to the use, rents, profits, and income thereof during his life; and if such rents, profits, and income shall not be sufficient

for his necessary support, then and in that event the trustee shall have full power and authority to use out of the principal what may be necessary for the comfortable support of my said son William E. Lewis so long as he shall live; and in the event of his death it is my will that so much of said trust property as is necessary be used to defray the funeral expenses of said William E. Lewis and to erect a suitable headstone at his grave.

"*Fifth.* It is my will, and I do hereby expressly declare, that the trustee for the benefit of my said son William E. Lewis have full power and authority to grant, bargain, sell, and convey any or all of the real estate that I may die seized and possessed of to any person or persons and their heirs forever in fee simple, and to execute all necessary deeds and conveyances for the purpose of perfecting such sale.

"*Sixth.* After the decease of my said son William E. Lewis before said trust property so given in trust as aforesaid shall be expended, then and in that event it is my will that the balance then remaining shall be and belong absolutely to the issue of the body of the said William E. Lewis, if any there be at the time of the decease of the said William E. Lewis, begotten in lawful wedlock; and in the event of the death of the said William E. Lewis without leaving issue of his body as aforesaid, then and in that event it is my will that the trust property so given as aforesaid remaining at his decease shall be disposed of according to the statute laws of this State relating to intestate estates. . . .

"*Eighth.* In the event my said son shall not survive me, then, and in that event it is my will and I do direct that my property after my decease be disposed of in accordance with the laws in regard to intestate estates.

. "*Ninth.* It is my will and I do by these presents give to the trustee full power and authority whenever in his judgment he deems it advisable, to pay the whole or any part of the trust property given as aforesaid to my said son William E. Lewis with the approval of the Court of Probate."

The testator left surviving him no wife, or lineal descend-

ants save only said William E. Lewis, his son, and no brother or representative of brother, or sister or representative of sister, save only one sister, Sarah Polly. He was also survived by five aunts, some maternal and others paternal.

Said Sarah Polly died intestate in 1895, leaving surviving her no husband, no lineal descendant, no brother or sister, and no representative of any brother or sister, except the said William E. Lewis.

Said William E. Lewis died intestate, August 3d, 1899, leaving surviving him no wife, or lineal descendant. He was survived by certain cousins. Two of the aunts of the testator above referred to also survived William. One still lives. The other has died leaving a child.

The testator's estate was duly settled and all claims against it and legacies were paid. After the payment of the funeral expenses of said William E. and the cost of the erection of a monument, there remained of the trust estate created by the portions of the will recited, in the hands of the plaintiff trustee, several thousand dollars in value of the estate, about equally divided between real and personal.

*Frank W. Marsh*, for the plaintiff.

*James Huntington* and *Arthur D. Warner*, for Miranda Gibbs et al.

*Alfred B. Beers* and *Carl Foster*, for Theodore Gray et al.

*Daniel Davenport* and *John F. Addis*, for Mary Castle et al.

PRENTICE, J. This will creates an estate for life for the benefit of William E. Lewis. Its language plainly limits the trust estate to one for the beneficiary's life. There are no words appropriate to a gift absolute or in fee, which subsequent provisions attempt to limit, cut down, or condition. The gifts over which are contained in the sixth paragraph, assuming them to be operative and valid, are, in so far as they relate to realty, contingent remainders. Both gifts de-

Thomas v. Castle.

pend upon events which may never happen. The right to enjoy the remainder estate, whether in the present or future, is wholly uncertain as to each class of persons named as possible beneficiaries. 4 Kent's Comm. (14th Ed.) 206; 2 Cruise's Digest, 269; *Farnam* v. *Farnam*, 53 Conn. 261; *Austin* v. *Bristol*, 40 id. 120; *Doe* v. *Considine*, 6 Wall. 458, 476. "If the remainder is limited to children living at the death of the life tenant, the remainder is contingent until the death of the life tenant." Tiedeman on Real Property, § 402. The first remainder being a contingent one and of a fee, the second limitation dependent upon it must necessarily be contingent. 2 Wash. on Real Property (6th Ed.), § 1576; 2 Cruise's Digest, 279. These contingent remainders are alternate remainders. Each is of a fee, but only one is intended to, or can by any possibility, take effect. The second named is a substitution for the first and not subsequent to it. The one fee is in no way limited upon the other. If the first attaches, the second utterly fails. Such an alternative limitation has been called a limitation with a double aspect. None of the conditions which compel a resort to the doctrine of executory devises to save the second gift exist. 2 Wash. on Real Property (6th Ed.), § 1575; Tiedeman on Real Property, § 415; 1 Fearne on Remainders, 373; 2 Cruise's Digest, 280; *Luddington* v. *Kime*, 1 Raymond Ld. 203; *Crump* v. *Norwood*, 7 Taunt. 362; *Doe* v. *Holme*, 2 Wm. Bl. Rep. 777; *Dunwoodie* v. *Reed*, 3 Serg. & R. (Pa.) 435, 452. The situation with respect to the personalty is the same in effect, since remainders therein, dependent upon a life estate, may be created by will. *Griggs* v. *Dodge*, 2 Day, 28, 51; *Hudson* v. *Wadsworth*, 8 Conn. 348, 361; *Langworthy* v. *Chadwick*, 13 id. 42, 46. The contingency contemplated in the first of the alternative provisions never happened nor can happen. The contingency contemplated in the second of the provisions has happened. It happened, as it was bound to do if it happened at all, the moment the life estate ended. 2 Blackstone's Comm. (4th Ed.) 168; 1 Swift's Digest, s. p. 96. The remainder thereupon—still assuming that the will contains an attempted gift of the remainder and a valid one—became a

vested one. The seizin of the real estate, if we apply com-
mon-law conceptions and requirements, which had been
supported by the intervening life estate then at once passed
to the owners in fee designated by the will. In like man-
ner the title to the personalty passed. What in both cases
had theretofore been contingent then became vested.

There remains to be considered what interpretation and
effect is to be given to the language of that portion of the
sixth paragraph of the will which deals with the disposition
of the trust property upon the death of William E. Lewis
without issue of his body surviving. If it is to be under-
stood as a declaration of intestacy, and that in the event
specified the property should be treated and disposed of by
the law as intestate estate, the result would be simple. As
William E. was the testator's sole heir at law, the property
would, upon the former's death, pass at once to his estate.
If the language is to be construed as expressing a gift under
the will, and that gift to the heirs at law of the testator to
be determined at and as of the time of the vesting, to wit,
the death of William E., the attempted gift would be in con-
travention of the statute against perpetuities and therefore
void. *Rand* v. *Butler*, 48 Conn. 293 ; *Tingier* v. *Chamberlin*,
71 id. 466. Intestacy with the consequences already in-
dicated would thereupon result. If, in the other possible
alternative, the language is to be interpreted as expressing
a gift under the will in the event stated, and that gift to the
general heirs at law of the testator, that is, his heirs at law
as of the time of his death, the same practical result as be-
fore would be reached unless, as the consequence of an im-
plication arising from the provisions of the will, the son
William E. should be excluded from taking as an heir at
law. There is nothing in the will to indicate such an in-
tention on the part of the testator, unless it be by implication
from the creation of the life estate in trust for his benefit.
In *Rand* v. *Butler*, 48 Conn. 293, 298, where there was pre-
cisely the same situation, we said that of themselves such
facts were clearly insufficient to base thereupon an implica-
tion of exclusion. In that case it appeared that the will

gave the remainder to the testator's "heirs at law," using the plural, whereas the beneficiary of the life estate, who was a grandson, was the sole heir at law not only at the testator's death but also when the will was made, and also that this grandson was an incapable person. In answer to the claim then made, that the grandson was, upon the facts, by clear implication excluded from the class who took as heirs, we said that in order to justify the giving to the word "heir" a construction different from the usual and accepted one, the intention of the testator must be clear and decisive, and that the facts of the case failed to so disclose any such intention. See also *Gold* v. *Judson*, 21 Conn. 616. For the reasons then given it must *a fortiori* be said in the case at bar, that no intention on the part of the testator to exclude his son William E. from any class of heirs at law entitled under the will to receive the remainder estate can be made to sufficiently appear.

The question of the interpretation of the concluding language of paragraph six need not be pursued further. It is evident that whatever construction be given to it the result must be the same, to wit, that the trust fund in the hands of the plaintiff at the time of the death of William E. Lewis passed by the will to the estate of said William E. Lewis to be administered as a part thereof. The ultimate destination of the property will be determined in the due course of such administration.

The Superior Court is advised that the trust property in the hands of the plaintiff administrator and trustee, as set out in the complaint, should be paid over to the administrator upon the estate of William E. Lewis, deceased, when one shall have been duly appointed and qualified, the same to be administered upon, divided and distributed as the estate of said deceased.

No costs in this court will be taxed in favor of either party.

In this opinion the other judges concurred.