JOHN T. LANGFORD *vs.* INHABITANTS OF MANCHESTER.

Middlesex.   January 11, 1907. — July 5, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Contract,* Construction.   *Evidence,* Extrinsic affecting writings.

A town about to construct a system of waterworks sent a blank form of pro-
posal of a contract for the construction to a contractor together with speci-
fications as to the construction and with directions requiring him before making
a proposal to "examine the location . . . in person," and to "examine the plan
of piping." The contractor examined the location and, at his request, was
shown the plan referred to in the proposal and was told by a representative of
the town who accompanied him that the piping to be laid was shown on the
plan. He thereupon filled out, signed and delivered to the town a proposal,
attached to the specifications, wherein he stated that it was "made in accord-
ance with the preceding specifications" and "with full intention to carry out
in detail . . . every requirement in said specifications," and wherein he also
stated that he agreed to do all the work "contemplated in the plan of piping."
His bid was accepted and thereafter he and the town made a contract in
writing wherein his proposal was referred to but was not incorporated and the
plan was not even referred to, he therein agreeing to construct the works as
described in the specifications which were made a part of the contract. He
performed work and furnished materials in places not shown on the plan but
included in the specifications and sought to be paid therefor as extras and not
according to the contract price. *Held,* that such work was performed and such
materials were furnished under the contract and should be paid for at the prices
stated in the contract and not as extras.

A contract in writing was made between a town and a contractor for the construc-
tion of a system of waterworks after a proposal in writing to do the work ac-
cording to a certain plan had been made by the contractor and accepted by the
town. In the contract no mention was made of the plan, but it was provided
that the work was to be performed according to certain specifications made a
part of the contract. In an action by the contractor to recover an extra price,
not the contract price, for work done and materials furnished, which were not
shown on the plan but were included in the specifications, it was *held,* that evi-
dence of reports of various town committees and commissions, of a contract
with a different person for another portion of the work which provided for
performance in accordance with the plan, and of statements and conduct of
agents of the town, all tending to show an intention, both before and after the
date of the contract, that the plan should determine what work was included in
the contract, were inadmissible to vary the terms of the contract.

CONTRACT for labor performed and materials furnished. Writ
in the Superior Court for the county of Middlesex dated January
20, 1896.

The trial was before *De Courcy*, J., who, after certain rulings and findings by him to which the plaintiff excepted, reported the case for consideration and determination by this court.

The plaintiff had been paid for the work done and materials furnished at the prices stipulated in the contract described in the opinion, such payment being accepted by him, under agreement of parties, without prejudice to the claim set up in this action, namely, that the work was done, and the materials were furnished outside of the contract, and that he should be paid therefor as extras.

The " conduct of the parties," mentioned in the third paragraph of the opinion, refers to evidence of acts of agents of the town which the plaintiff contended might be interpreted as showing an intention on their part that the work done and materials furnished, since they were not shown on the plan referred to in the opinion, should be treated as extras.

Other facts are fully stated in the opinion.

*H. W. Dunn*, (*C. P. Warren* with him,) for the plaintiff.

*W. O. Underwood*, for the defendant.

MORTON, J.   This is an action of contract to recover for alleged extra work and material done and furnished in laying water pipes in and for the defendant town in the construction by it of a system of waterworks.   The principal question is whether the plan referred to in the proposal which was submitted by the plaintiff and accepted by the defendant constituted a part of the contract which was subsequently entered into between the parties.   The plaintiff has been paid according to contract prices for all the work that he has done and for all the material that he has furnished with the exception of a small balance which it is agreed is due him under the contract, and with the exception of a small amount which it also is agreed is due him for extra work and material and for which he is to be paid as such.   The plaintiff contends that under the contract he was not bound to lay any pipes except as indicated upon the plan referred to in the proposal, and that for all pipes laid outside of the lines thus indicated he is entitled to be paid by the day for the work, and at a fair and reasonable rate for the material.   The defendant contends that the plan formed no part of the contract, and that the plaintiff was bound under the con-

tract to lay pipes in such streets and through such lands as the engineer should direct at the prices named in the proposal and in such manner as the specifications provided for, so long as the possible amounts prescribed in the specifications were not exceeded. It also contends that, except as above stated, the plaintiff has been paid all that is due him. The court ruled substantially in accordance with the defendant's contention, and directed a verdict for the plaintiff for the amount admitted to be due, and reported the case to this court; if his rulings on this and on certain questions of evidence that were presented were right, judgment is to be entered on the verdict; otherwise a new trial is to be granted. We think that the rulings were right.

The defendant town was authorized by St. 1891, c. 95, to supply itself with water. The act was duly accepted and a board of water commissioners was elected which was authorized to proceed with the construction of a system of waterworks. Pamphlets were prepared by the board having pasted on the inside of the front covers copies of a paper entitled " Sealed Proposals " and containing in addition specifications, a schedule of approximate quantities, and a form of bid or proposal, and were sent to contractors who were regarded as likely to bid. One was sent to the plaintiff. The paper entitled " Sealed Proposals " invited bids " for laying cast-iron water-pipes, and special castings and setting fire hydrants, valves and valve boxes required for the proposed water works," and began as follows : " The work is to be done in strict accordance with the accompanying specifications, and all proposals must be made on the blank form provided herewith." It contained amongst other things directions to bidders requiring them to " examine the location of the proposed work in person, examine the plan of piping, note the character of the ground where the trenches are to be excavated, and acquaint themselves with all the requirements and contingencies liable to affect the work." The plaintiff submitted a bid on one of the blanks thus provided. The blank was headed, " Manchester Water Works. Proposals to the town of Manchester, Mass., for laying cast-iron water-pipes and setting special castings, valves and fire hydrants in accordance with the preceding specifications," and then proceeded as follows : " Dated

June 17, 1891, John T. Langford of Newton, Mass. [these words being written in] hereby assert and declare that this proposal is made in accordance with the preceding specifications and in good faith and full intention to carry out in detail each and every requirement in said specifications. And —— hereby agree to lay all pipes and set all special castings, valves, fire hydrants, etc., contemplated in the plan of piping adopted by the said town, and perform all labor and do all things necessary for the following prices, viz. : " Then follow the prices ; and the proposal concludes, " And the above prices shall include and cover all charges on my part on account of the above specified work should this proposal be accepted." Before submitting this bid or proposal the plaintiff visited the town and had an interview with Mr. Knight, the chairman of the water commissioners, and made an investigation of the character of the soil and of the general conditions attending the work of excavation and of laying pipes. He asked to be shown the plan referred to in the proposal and was shown a plan which had been prepared by the engineer for the town which had upon it lines indicating the streets, which were public streets, where the piping was to be laid, and the chairman told him that the piping to be laid in the town was shown upon it, and afterwards drove him over the lines thus indicated. The plaintiff's proposal was accepted, as already observed, and if the parties had been content to rest upon the contract constituted by the acceptance of his proposal and the plaintiff had gone on under it, there would be strong ground for his contention that the pipes to be laid were those indicated on the plan, though even then it would have been inconsistent with the specifications. But the parties were not content to leave the matter there. They entered into a formal written contract, and it is upon that that their respective rights depend. The proposal bears date June 17, 1891, though it is spoken of as being dated June 16. The contract was " made and concluded " on the third day of July, 1891, and recites, " that whereas said John T. Langford has under date of June 16, 1891, made a proposal to the town of Manchester for laying the cast-iron water pipes and setting the special castings, etc., connected therewith . . . which proposal is attached hereto marked ' B,' and Whereas said Town of Manchester by its Board of Water Commissioners

has accepted said proposal and notified said Langford thereof,
Now therefore, said Langford hereby explicitly and specially
agrees in consideration of the payment to him of the prices
named in his said proposal ('B') to undertake . . . and com-
plete in the most . . . workmanlike manner the laying of the
cast-iron water-pipes and the setting of the special castings,
valves, valve boxes and fire hydrants named and described in
the specifications therefor . . . which specifications are attached
hereto, marked ' A.' and made a part of this contract, and to
furnish all the materials," etc. " And the said Langford further
agrees that the prices named in his proposal of June 16, 1891
('B') shall cover all charges, claims or demands on his part
on account of this contract, and that he will accept the terms
and stipulations contained in the specifications issued by said
town, and that he will conform to the requirements of said speci-
fications in all other respects as defined to him from time to
time by the . . . Engineer." It will be seen from this that, while
the specifications are expressly made a part of the contract, the
proposal is not, and that it is only referred to for the purpose of
fixing the prices that are to be paid for the work and material
that is to be done and furnished. It will also be seen that no
reference is made to the plan. Turning to the specifications,
which are thus made a part of the contract, we find it expressly
provided that " The trenches for pipe laying shall be opened at
such points and upon such streets and through such lands and in
such order as may be directed by the Engineer, and in accordance
with the lines and grades given or directed by him." In other
words, the result would seem to be that the plan was used and
referred to to show in a general way the work to be done and the
streets and localities through which pipes were to be laid, but
when it came to the making of the contract the parties not only
did not restrict themselves to it, but made no reference to it,
and left the matter in the end to the direction of the engineer.
Two other considerations tend, we think, to support this view :
1, the amount to be paid by the town was not a lump sum, but
so much per linear foot of pipe laid, and so much per cubic yard
of rock and extra earth excavated, — in other words according
to the amount of work done, though the plaintiff testified that
the extra work was mostly through private estates where it was

more expensive ; 2, the number of feet of pipe to be laid given in the schedule of approximate quantities attached to or accompanying the specifications, and the number of feet contained in the proposal submitted by the plaintiff exceeded by upwards of eighteen thousand feet the number of feet indicated on the plan, thus showing or tending to show that the plan could not have been regarded as entering into the contract.

We see nothing in the conduct of the parties requiring a different construction. For a time the engineer seems to have acted in a manner inconsistent with any other construction without objection from the plaintiff, though the plaintiff afterwards objected, and a *modus vivendi* was agreed upon.

The construction which we have given to the contract renders it unnecessary to consider the scope of the section in the specifications which provides that, in cases of dispute, the engineer shall decide as to their meaning and intent, or to consider the effect to be given to his decision upon the plaintiff's claim.

Certain evidence offered by the plaintiff was excluded and he excepted. The evidence consisted of the report made February 1, 1891, by the committee appointed by the town to investigate the question of a supply of water for the town, of a contract between the town and the Camden Iron Works, dated June 1, 1891, for furnishing pipe, castings, etc., of a report of a town meeting held August 31, 1891, and of the report of the water commissioners for the year ending March 1, 1892. These were all offered as bearing upon the construction of the contract, and as tending to show that the parties contracted with reference to the lines of piping shown on the plan. We think that the evidence was rightly excluded. It was incompetent and immaterial. The contract speaks for itself. And, while the circumstances under which the contract was entered into may be shown for the purpose of aiding in its interpretation, the parties cannot be allowed to affect its construction by evidence of oral or written statements or declarations as to what was intended to be included in it, made before or after its execution.

The result is that the entry must be

*Judgment on the verdict.*