CHARLES E. GROSS ET AL., TRUSTEES, *vs.* THE HART-
FORD-CONNECTICUT TRUST COMPANY, EXECUTOR,
ET ALS.

First Judicial District, Hartford, January Term, 1924.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

A testator, whose daughter was his only surviving child, created a trust
fund of $200,000, the net income of which he directed should be
paid to her "during her life." In case the daughter left a surviving
child or grandchild, the principal of the fund was to go to him or
them; otherwise, upon his daughter's death he gave said fund, and
directed the trustees to pay the same, to ' my heirs at law." The
testator also gave to his daughter the residue of his property in fee,
which he estimated would at least equal the amount of the trust
fund. At the death of the testator in 1885, he left surviving him
one sister of the whole blood, two brothers of the half blood, and
a nephew, the son of a deceased sister of the half blood. In a suit
to determine who was entitled to the trust fund, it was *held*:—

1. That the expression "heirs at law" was used in its comprehensive
and popular sense to indicate all those who would inherit real or
personal estate upon the decease of the testator.

2. That in giving the trust fund, upon the decease of his daughter, to
his "heirs at law," it was clearly the testator's intention to exclude
the daughter as one of his heirs.

3. That it was equally clear the testator did not intend that the trust
fund should become intestate estate.

4. That under our statute of distribution, § 5063, the testator's sister
of the whole blood, who survived him in 1885, was entitled to re-
ceive the fund in preference to the testator's half brothers and
sister.

The word "heirs" has so often been used in a will to include all who
would inherit either real or personal estate, that there is no longer
any good reason for insisting on its technical significance, except
where the intent to so use it is apparent.

Argued January 2d—decided March 1st, 1924.

SUIT to determine the validity and construction
of the will of William A. Healy of Hartford, who died
in September, 1885, with respect to the disposition of
a trust fund of $200,000 therein created, brought to

and reserved by the Superior Court in Hartford County, *Webb, J.*, upon an agreed statement of facts, for the advice of this court. *Judgment advised in favor of the estate of Eliza H. Moredock.*

*Charles E. Gross, Charles Welles Gross,* and *Alvan Waldo Hyde,* for the plaintiff trustees.

*John T. Robinson,* for the Hartford-Connecticut Trust Company, executor of the will of Susie Healy Camp.

*Augustine Lonergan* and *Edward H. Kelly,* for Reuben Healy *et al.*

*Henry J. Calnen,* for William H. Newton, administrator on the estate of Eliza H. Moredock.

*Raymond G. Calnen,* for William H. Newton individually.

WHEELER, C. J.   The will of William A. Healy bears date March 21st, 1885, and on the following September 29th the testator died.   The fourth article of the will bequeathed $200,000 to three named individuals in special trust for the following uses and purposes: to hold and invest the same and pay over to the testator's daughter, Susie, the net income thereof quarterly during her life, and upon her decease, in case she should leave a child or children surviving, the trustees were to divide the trust estate into as many parts as there might be living children, and deliver one part to each child upon arriving at the age of twenty-one, and to hold the part of any child who should not have arrived at that age and apply the net income for his maintenance, education and traveling expenses until he should have arrived at the age of twenty-one, and then pay

over to him his equal part together with any accumulations thereof. In case any child of Susie should die before her decease leaving a child or children, he or they should receive upon her death the part which his or their parent would have received had such parent outlived her and arrived at the age of twenty-one. Then follows the portion of the article in controversy: "In case my daughter shall not leave any child or grandchild surviving her, then and in that case upon my daughter's death I give said fund and direct said trustees to pay over the same to my heirs at law."

Article fifth provides: "I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, and wherever situated, to my beloved daughter, Susie V. Healy, to be to her and her heirs and assigns forever. And as my expectation is that this residuum of my estate, will at least equal the amount of all the foregoing legacies, a large portion of which, in case of the death of my daughter, my intended son-in-law, Mr. John S. Camp (for whom I have a very high esteem) will receive, I have, for this reason, omitted to give him any other legacy in this will."

Mr. Healy left surviving a daughter, Susie V. Healy, who married on April 8th, 1885, John S. Camp, named in article fifth of the will. Susie H. and John S. Camp had no children and were divorced May 28th, 1919. Susie H. Camp deceased February 7th, 1923, without issue, and the defendant Hartford-Connecticut Trust Company is the executor of her will. Mr. Healy left surviving him a sister of the whole blood, Eliza H. Moredock, who died on April 4th, 1902, intestate, and defendant William H. Newton is the administrator of her estate, and the son of Mrs. Susan Newton, a daughter of Mrs. Moredock of the whole blood, who died March 28th, 1920.

Mr. Healy also left surviving him two brothers of the half blood, Christopher J. Healy and Reuben Healy, and a nephew Stillman F. Wilson, the son of a deceased sister. Christopher Healy has since deceased leaving surviving him a daughter, Mary S. Healy, who, with Reuben Healy and Stillman F. Wilson, are defendants and of the half blood.

Susie H. Camp having died without issue, the question reserved for our determination is, to whom shall the trust fund in the hands of the plaintiff trustees be paid? This is to be answered by our construction of that part of article fourth, reading: "and in that case upon my daughter's death [leaving no issue] I give said fund and direct said trustees to pay over the same to my heirs at law."

Our construction must begin with the ascertainment of the intention of the testator and end by carrying the intention so found into effect. When a testator names as beneficiaries under his will his heirs at law, unless a contrary intention appears in the will, his "heirs at law" will be assumed to be used in their comprehensive and popular sense, as being those who are his heirs at the time of his death, and all who would inherit real or personal estate. "In fact, the word 'heirs' has been so often used and construed as including all who would inherit either real or personal estate, that there is no longer any good reason for insisting upon its technical significance, except where the intention to use it in that sense is apparent." *Morse* v. *Ward,* 92 Conn. 408, 411, 103 Atl. 119; *Tingier* v. *Chamberlin,* 71 Conn. 466, 469, 42 Atl. 718; *Dickerman* v. *Alling,* 83 Conn. 342, 345, 76 Atl. 362.

The only heir at law of the testator at the time of his death was his daughter Susie, who was the life tenant of this trust fund. By his gift of this fund to his "heirs at law," did the testator intend that his daughter, the

life tenant of the fund, should take, or did he intend his heirs at law to take exclusive of the life tenant? We think the testator's intention can be ascertained from the will itself without recourse to presumption or extraneous facts.

The scheme of the will indicates that the testator desired to protect his only child, his daughter and her descendants, against the contingencies of the future. He gave the residue of his estate, which he estimated to be at least half of his large estate, outright to his daughter, "to be to her and her heirs and assigns." He gave to three friends in special trust $200,000, the other half of his estate, to hold and invest and pay over to his daughter Susie the net income "quarterly during her life, for her sole use." Upon her decease leaving issue, the trustees were to divide the fund into as many equal parts as there were children and deceased children leaving a child or children, and when each child reached, or would if living have reached the age of twenty-one, to pay over to such child or the children of a deceased child, one of these equal parts. In case the daughter died leaving a child, or the issue of a child, the principal of this fund passed to such child or issue. In no event was the daughter to take the principal of this fund in case she left surviving her a child or the issue of a child. One other contingency the testator desired to provide for, that of his daughter dying without issue. The testator met this contingency by giving the fund to and directing the trustees to pay over the same to his heirs at law. His designation of heirs instead of heir, if he intended to designate by this term his daughter, is not of significance, but a very common use of language in such a connection. His direction " to pay over the same to my heirs at law," assumes in the language used that the payment is to be made to living heirs, since the payment is to be made at the death of

his daughter Susie. The disposition of the residue by the fifth clause shows that the testator did not intend to die intestate. If he intended the remainder in the trust fund, in case Susie died leaving no child or grandchild surviving, to go to Susie, the disposition of the residue in article fifth would have accomplished this purpose, and this provision in article fourth leaving the remainder of this trust fund to Susie as his heir at law was useless. The entire will is indicative of a skilled draftsman's workmanship. The question recurs, why did such a draftsman insert this useless provision? This skilled draftsman could by a clause have provided that the trustees should pay this remainder to the estate of Susie, or have turned it into the residue. He did neither, but drafted a clause which at best was questionable in meaning and difficult of construction if he intended Susie to take this remainder. The residue, the testator says in article fifth, he expects will at least equal the amount of the foregoing legacies, and these include this trust fund. Could there be clearer indication that neither the testator nor the draftsman intended the remainder of the trust fund to become a part of the residue? The testator's reference to the fact that his intended son-in-law will be the natural object of his daughter's bounty in the residue, which he estimates will equal the legacies including this trust fund, as the reason of the testator for omitting to give him "any other legacy in this will," unmistakably emphasizes the testator's intention that Susie's estate was not to take the remainder of this trust fund. The testator intended in article fifth to give his daughter Susie complete title to all of the residue, thus making it transmissible by will or descent. And he did not intend to give her a like title to the remainder of the trust fund.

The will expresses the testator's purposes with defi-

niteness. It is consistent throughout. To his only child he gives outright about one half of his estate; to her he gives the life use of the other half and the remainder to her issue, and in lieu of her leaving issue, to his heirs at law. The interest of his daughter in the trust fund was in the net income; she was given no control over the remainder and no interest in it. She having died leaving no issue, the trust fund passed to the testator's heirs at law excluding from this designation the life tenant.

In the analogous case of *Close* v. *Benham,* 97 Conn. 102, 108, 115 Atl. 626, we say: "When the testator gave to Lizzie a life use with remainder to her issue, he indicated his intention that she should have no share in, or disposition of, the remainder, and the subsequent provision, that in the event of her decease the next of kin should take, was not intended to include her among the next of kin, and so to take a share of this interest upon the death of the testator." See also *Nicoll* v. *Irby,* 83 Conn. 530, 77 Atl. 957; *Wilde* v. *Bell,* 86 Conn. 610, 87 Atl. 8; *Hartford Trust Co.* v. *Purdue,* 84 Conn. 256, 259, 260, 79 Atl. 581. Since we find in the will a clear intention on the part of this testator to exclude the daughter, the life tenant, from those designated by the term heirs at law, we find no occasion to discuss or analyze the cases upon which counsel for the executors of the estate of Susie H. Camp rely, viz: *Rand* v. *Butler,* 48 Conn. 293, and *Thomas* v. *Castle,* 76 Conn. 447, 56 Atl. 854.

It is so plain as to be quite unnecessary to argue the point, that this testator did not intend this trust fund should become intestate estate. Under our statute of distributions Mrs. Moredock, the only relative of the full blood living at the death of the testator, takes in preference to the kindred of the half blood.

The Superior Court in Hartford County is advised

that the plaintiff trustees should deliver and pay over. the trust fund, the net income of which Susie H. Camp enjoyed the life use of, less the proper expenses of the trustees incurred in the administration of the trust fund, to William H. Newton, administrator on the estate of Eliza H. Moredock.

No costs will be taxed in favor of any party in this court.

In this opinion the other judges concurred.