PRINCE M. CROWELL, administrator, vs. BENJAMIN R. CHAPMAN & others.

Barnstable.    May 24, 1926. — November 24, 1926.

Present: BRALEY, CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Devise and Legacy,* Life estate, Disposition of remainder "according to law."

The rule of law applicable to the construction of wills in this Commonwealth is to get at the intent of the testator and to give it effect; but not to create an intent when none appears, nor to permit some of the words of a will to contravene an intent fairly to be deduced from a study of the will as a whole and of the circumstances in the light of which it was executed.    Per WAIT, J.

A testator, who had no living children and as his nearest kin two sisters, made a will, in which, after several specific legacies of small amounts to relatives, in an article 19 he devised his "homestead" property to his wife "To have and to hold to her own use and behoof forever."    In article 20, he gave all the rest, residue, and remainder of his estate to his wife, "To her own use and enjoyment, during her life," and also gave her in many succeeding sentences power to "spend" or to "use" "the principal of it . . . if she shall at any time think such a course will add to her happiness or comfortable support."    In succeeding articles, he made disposition of what may be left of "my said property" at her death and of certain property if "unappropriated expended or sold" by his widow, and in article 25, suggested her making a will for the disposing in certain ways of such income as she might not have needed "for her happiness or comfortable support."    In article 24, the following provision was made "as to the final remainder of my said property . . . . It is my will that the same be distributed according to law."    *Held,* that

(1)  By article 20, the wife was given a life estate only;

(2)  The income from the property during the wife's life became her absolute property and was subject to the provisions of her will: article 25 did not dispose of it;

(3)  Under article 24, on the death of the testator, an estate vested in the widow as one of those entitled by statute to a distributive share in the estate, and that estate passed by her will on her death.

PETITION, filed in the Probate Court for the county of Barnstable on March 31, 1925, by the administrator with will annexed of the estate of Daniel Hedge, late of Dennis, for instructions.

In the Probate Court, the petition was heard by *Campbell*, J.    Articles of the will previous to article 21 are quoted and described in the opinion.    Articles 21–25 were as follows:

"Article Twenty first.    At the decease of my said wife Abby M. Hedge; out of the remainder of my said property and estate, unappropriated expended or sold by my said wife; whether the same be real, personal or mixed property, I give devise and bequeath as follows:—

"Article Twenty second.    I give to my nephew Joseph Hedge, one half of my Cranberry Swampland, known and called Run Pond swamp, together with one half of the woodland and other land connected therewith, and also my rights and preveleges appertaining thereto, together with one half of all buildings, engine and other machinery on the premises.    To have and to hold, to his own use and behoof forever.

"Article Twenty third.    I give to my nephews, John M. Hedge, and George S. Hedge, the remaining half of said Cranberry swamp land, with rights and preveleges appertaining thereto: together with one half of all buildings, engine and other machinery on the said premises.    All to be divided equally between them.

"Article Twenty fourth.    And as to the final remainder of my said property and estate, real, personal and mixed, It is my will that the same be distributed according to law.

"Article Twenty fifth.    While I have given to my said wife Abby M. Hedge, absolute power and authority over my property and estate given her by this will: nevertheless I realize that there may happen to be an accumulation of income therefrom, more than she may need for her happiness or comfortable support.    And should such an event so happen, I am anxious to make some provision for the final distribution of said income in accordance with her desire and wishes.    Wherefore, I recommend to my said wife; that as soon as may be after my decease: she make a will: or add a codicil to her will already made, disposing of said income so as aforesaid as follows:—Giving one third of said income to the heirs of Sallie C. Chapman: and the remaining two thirds of said income to my heirs at law."

Other material facts and the decree entered by order of the judge are stated in the opinion.

The case was submitted on briefs.

*H. F. Parker & O. V. Fortier,* for Chapman and another.

*F. T. Hammond, Jr.,* for the respondents Grace Hedge Kemp and Merle Hedge Duryee.

*J. T. Hughes & H. L. Barrett,* for the respondents Milton P. Hedge and others.

WAIT, J. This petition sought the construction and interpretation of certain articles of the will of Daniel Hedge, and instructions with regard to the persons to whom the property dealt with by these articles should be distributed. The first eighteen articles and the first codicil gave specific legacies of small amounts. No question arises in regard to these; nor in regard to Article 19, which gave to his widow his "Dwelling House, Barn, and out-buildings, and all of my homestead land, situate in East Dennis, Mass. To have and to hold to her own use and behoof forever."

The judge of probate decreed that under Article 20 the widow, Abby M. Hedge, took a life estate in the property given with power to appropriate the principal and income for her happiness or comfortable support if she so desired; that, under Article 24, upon her decease, what remained, with the exception of certain property devised by Articles 22 and 23, passed to the persons, other than the widow, who would have inherited Daniel Hedge's estate had he died intestate, and who were living at the time of his death; that Abby M. Hedge's devisees or heirs at law were not to be included in the distribution; that Article 25 was a recommendation only, and that the property dealt with by that article passed on the death of Abby M. Hedge to the persons entitled to the residue under Article 24.

The appellant, who is executor and residuary legatee under her will, contends that the judge erred in holding that Abby M. Hedge had only a life estate, that her devisees and heirs at law had no standing as distributees, and that, if she took a life estate, she was to be excluded in determining those who would have inherited Daniel Hedge's estate had he died intestate.

The principles upon which this court proceeds in the construction of wills have been so recently and so fully stated in *Temple* v. *Russell*, 251 Mass. 231, 235, 236, that they need not be restated. The law is to get at the intent of the testator and to give it effect; but not to create an intent when none appears, nor to permit some of the words of a will to contravene an intent fairly to be deduced from a study of the will as a whole and of the circumstances in the light of which it was executed.

Daniel Hedge had had two children, both of whom died unmarried before he made this will on November 18, 1905. His nearest kin were two sisters. He had numerous nephews and nieces. His main purpose in executing a will manifestly was to express his friendly feeling for these kin and to provide amply for his wife. To them he gave the small legacies already mentioned. To her he gave the homestead, in fee, by apt words in Article 19, and to her, by Article 20, he gave as follows: "All the rest, residue and remainder of my property and estate, real, personal and mixed, which at the time of my death I own, am interested in or entitled to, and over which I have the power of disposal, I give to my wife, Abby M. Hedge, To her own use and enjoyment, during her life; and the principle of it, may be spent or used by her, if she shall at any time think such a course will add to her happiness or comfortable support. I give to her in her own right or as executrix of this will, the most unlimited power and authority, to sell and convey in fee simple: free from all remainders and trusts, with warranty is she chooses, and without the necessity of applying to any court for leave so to sell, all or any part or parts of my real estate, at such time or times, at auction or at private sale, to such person or persons, and for such consideration as may seem to her judicious and for the best interest of herself; and no purchaser from her in either capacity, shall in any possible event be found to see to the application of the purchase money therefor. She may spend for her own use the net proceeds of all such sales, or said proceeds may be by her invested from time to time at her discretion; and the income and also the principle of all such investments,

may be applied by her to her own use if she chooses; and she shall never be called on to account for the expenditure by her for her use, happiness or comfortable support, of any part or parts of my said property; either principle or income, and whether said property be real estate, personal or mixed property. And I also give to her the most unlimited power and authority, in her own right, or as Executrix of this will, to pledge in mortgage any of such property, and to make, execute and acknowledge and deliver all proper deeds to effect such mortgage: or to sell and convey any or all of such property as previously mentioned." The intent to give only a life estate is almost vocal. Article 19 shows that the testator knew how to give a fee simple. He could have given one here, if he had wished, yet he turned away from the language creating a fee and gave only "during her life"; adding power after power which were entirely uncalled for if he had supposed himself to have given a fee. His opinion in regard to what he had given appears with great distinctness in Article 21, where he begins himself to dispose of what is left of "my said property" at her death; and in Articles 22 and 23, where he gives his cranberry swamp land with other land, buildings, engine and machinery and the rights and privileges thereto appertaining to his nephews Joseph, John and George Hedge if "unappropriated expended or sold" by his widow — all of which provisions were void if he had given his wife a fee. Article 25 is even more suggestive; for by that article, stating his realization that there might be left something from accumulation of income greater "than she may need for her happiness or comfortable support," and his desire to make final disposition of such income in accord with her desire and wishes, he "recommends" its disposition by her in a way he indicates. It is incredible that he would have troubled to indite Articles 21, 22, 23 and 25, or have left the law to distribute the "final remainder of . . . [his] said property . . ." as he did by Article 14, had he intended to give Abby M. Hedge a fee, and believed he had so given.

The rule that an ascertainable intent is to govern puts an end to the rule of law that a gift to A of a life estate with

full power of disposition, remainder in what might be left at his death to B, gave a fee to A and nothing to B. Both rules cannot coexist. The intent to give something to B is too plain. *Kemp* v. *Kemp,* 223 Mass. 32, and cases cited.

The judge was right in holding that Abby M. Hedge took only a life estate in the property given by Article 20. He was right also in holding that Article 25 merely recommends and does not oblige the life tenant to adopt the disposition suggested for any surplus income. Such is the clear import of its language. The full construction to be given the article is not so plain. The testator seems to think himself bound to make a disposition of such surplus income as forming part of his estate, yet he does not do it; and he uses language which is consistent, also, with a belief that the property belonged to the wife. He recognized her unquestionable right to use or dispose of it as her "happiness" or comfort required. His hesitation may be due to his uncertainty whether any such surplus would ever exist, or whether he could deal with it. The will does not show a clear intent in this regard. The provisions of Article 20 relieve the widow from any obligation to account for the income. Since no obligation to account exists, and none was intended to be imposed, we hold that income as it accrued became the absolute property of Abby M. Hedge, and, in consequence, passes by her will and not under Article 24 of the will of her husband. In other words, Article 25 does not create a precatory trust, nor does it constitute a gift to the wife of income for life with power to appoint any unused surplus income to specified donees under the power. It is purely and simply a recommendation. The decree must be modified in respect to the disposition of surplus income.

No serious contention is made, if Abby M. Hedge took only a life estate, that under Articles 22 and 23 Joseph, John M., and George S. Hedge, did not take contingent remainders, vesting in right at the death of Daniel Hedge and in possession at the death of Abby M. Hedge leaving the property neither appropriated, expended, nor sold by her in her lifetime.

It remains to consider Article 24: "And as to the final remainder of my said property and estate, real, personal and mixed, It is my will that the same be distributed according to law." Nothing in the will, the codicils, nor in the evidence reported, shows any intent in this regard, on the part of Daniel Hedge, other than appears in these words. He had no descendants. He had made distribution of his property between his wife and his kin, giving her much the greater share. By his first codicil he gave to a nephew, who had escaped his memory at the execution of the will, the same small amount he had given his other nephews except Joseph, John and George who might possibly receive the cranberry swamp and what went with it. By his second codicil, made after the death of a sister, he passed the amount she might have had into the corpus of the estate to be dealt with as if the gift to her "never had been written" in his will. The article shows on its face that he had no intent except to leave the final distribution to the law. He had provided for his wife and had recognized his kindred. If anything remained to be done the law could attend to it. Evidently he had no further care what happened. There is nothing to indicate that he considered whom the law favored or when these ultimate distributees were to be determined.

It is well settled law that where a gift over to heirs at law, to next of kin, or to those who would take had the testator died intestate, follows a life tenancy, the life tenant, if included within the class, takes a remainder as one of the class. It results from the law's desire to vest estates at the earliest possible moment. Unless a clear intent to the contrary appears, the class will be determined as of the date of the testator's death, and the life tenant will share if then a member of the class. *Whall* v. *Converse,* 146 Mass. 345. *Jewett* v. *Jewett,* 200 Mass. 310. *Welsh* v. *Blanchard,* 208 Mass. 523. *Blume* v. *Kimball,* 222 Mass. 412. *Brown* v. *Spring,* 241 Mass. 565. *Hedge* v. *State Street Trust Co.* 251 Mass. 419. *Ball* v. *Hopkins,* 254 Mass. 347. Compare *Heard* v. *Read,* 196 Mass. 216; *Welch* v. *Brimmer,* 169 Mass. 204. The cases of *Buzby's Estate,* 94 N. J. Eq. 1, *Close* v.

*Benham,* 97 Conn. 102, and *Gross* v. *Hartford-Connecticut Trust Co.* 100 Conn. 332, cited by the defendants, are distinguishable.

When Daniel Hedge died on December 13, 1906, leaving a widow, no children, a sister and nephews and nieces, had he been intestate, his widow would have been one of those to whom the law gave a share in the estate.  St. 1905, c. 256. Under Article 24 of the will, therefore, a right in the final remainder vested in her and at her death it passed under her will.  The judge was wrong in excluding her from the class.

It follows that the decree must be modified.  The petitioners must be instructed that under Article 20, Abby M. Hedge took a life estate in the property not disposed of by Articles 1 to 19 inclusive and the codicils; that under Article 24, those living at the death of the testator who would share in his estate had he died intestate, took interests which vested at that time, and they included Abby M. Hedge, whose share in "the final remainder" must go as provided by her will; that Article 25, was a recommendation which imposed no duty upon Abby M. Hedge and gave nothing to heirs of Sallie C. Chapman and heirs of the testator; that income as it accumulated became the absolute property of Abby M. Hedge, and any surplus of income which may have remained unexpended in her hands at her death passes under her will and should be paid to her executor.

*So ordered.*