340 P.2d 1091

In the Matter of ESTATE of Philip P. WEBER, Deceased, and Trusteeship Created under Will of Said Deceased, E. M. Flohr and A. F. Bittrick, Trustees, Plaintiffs-Appellants,

v.

Marian S. CHRISTENSEN, A. W. Ensign, Jr., John F. Ensign, Margaret E. Davies, John Weber, Lynda C. Weber and Nell Wentz, as Administratrix of the Estate of Munro Wentz, deceased, Defendants-Respondents.

No. 8747.

Supreme Court of Idaho.

July 2, 1959.

Eugene F. McCann, Chas. E. Horning, Wallace, for appellants.

Brown & Peacock, Kellogg, George R. Kneeland, Hailey, Kendrick Johnson, Reno, Nev., for respondents.

Richards, Haga & Eberle, Boise, amicus curiae.

PORTER, Chief Justice.

In the year 1934, Philip P. Weber and Lucy Weber, were husband and wife. They had been married many years and were living in Shoshone County. He was 75 years of age and she was 67 years of age. They had no children and the father and mother of each of them were dead. At that time Philip P. Weber had one living brother and one living sister. His four other brothers and sisters had died, three of them leaving descendants.

On April 4, 1934, Philip P. Weber and his wife, Lucy Weber, executed an instrument designated "Joint Will and Trust Agreement." The purpose of the instrument was to protect the interests of Lucy Weber in the case of the death of Philip P. Weber, as she was without business and financial experience. The instrument provided generally that in the case of the death of Philip P. Weber, the community property of the parties should be transferred

to trustees to be held in trust for the use and benefit of Lucy Weber until her death, when his one-half of the remaining trust estate should descend to his heirs and her remaining one-half of said estate should descend to her heirs. Provision was made for the distribution of the community property in case the wife died before the husband. We are not concerned with such provision in these proceedings.

Philip P. Weber died on September 9, 1934. At that time the one brother and one sister were still living. In accordance with the terms of the Joint Will and Trust Agreement, the community property, except for certain reserved items, was all placed in the hands of trustees for care and administration according to the terms of the Joint Will and Trust Agreement.

The trust was duly administered for the benefit of Lucy Weber until her death on September 30, 1956, when the trust, by its terms, automatically terminated. At that time the brother and sister who had survived Philip P. Weber, were both deceased. The trustees, E. M. Flohr and A. F. Bittrick, filed a petition with the Probate Court of Shoshone County for determination of the legal heirs of Philip P. Weber to whom his one-half of the trust estate should be distributed. They alleged that the estate should be distributed to the following named persons:

"Edith G. Doll and Horace A. Weber, children of Philip's brother, Charles W. Weber

"Alida W. Bernhard, child of Philip's sister, Lizzie Weber Wentz

"Florence Harrison, child of Philip's brother, Peter Weber

"Clara McKinney, child of Philip's sister, Christina Weber Rudolph."

This group consists of the nieces and nephews of Philip P. Weber living at the time of the death of Lucy Weber.

The following named persons objected to the petition of the trustees and prayed that they also be recognized as legal heirs:

"Marian Stowe, whose name by marriage is Marian Stowe Christensen, as the sole surviving child of Vivian Weber Stowe, deceased, who was a daughter of Peter Weber, deceased, who was a brother of the said Philip P. Weber, deceased

"Arthur W. Ensign, John F. Ensign and Margaret E. Davies, sole surviving children of Florence Loretta Weber Ensign, deceased, who was a daughter of John H. Weber, deceased, who was a brother of the said Philip P. Weber, deceased

"John Donald Weber and Lynda Cecile Weber, sole surviving children of Brooks Weber, deceased, who was a

son of John H. Weber, deceased, who was a brother of the said Philip P. Weber, deceased

"Munro Wentz, sole surviving child of Charles Wentz, deceased, who was a son of Lizzie Weber Wentz, deceased, who was sister of the said Philip P. Weber, deceased."

This group of persons consists of the descendants of the nieces and nephews of Philip P. Weber, who had died prior to the death of Lucy Weber.

The probate court decided that Philip's one-half of the trust estate should be distributed as prayed by the trustees under the provisions of I.C. § 14–103, sub-section 5. This decision was appealed to the district court where judgment was entered that such distribution should be made to heirs of Philip P. Weber, deceased, including the objectors, determined under the provisions of I.C. § 14–103, sub-section 3. From such judgment, this appeal has been taken.

I.C. § 14–103, sub-section 3 and sub-section 5, reads as follows:

"When any person having title to any estate not otherwise limited by marriage contract, dies without disposing of the estate by will, it is succeeded to, and must be distributed, unless otherwise expressly provided in this code, subject to the payment of his debts, in the following manner:

*   *   *   *   *   *

"3. If there be neither issue, husband, wife, father nor mother, then in equal shares to the brothers and sisters of the decedent, and to the children of any deceased brother or sister by right of representation.

*   *   *   *   *   *

"5. If the decedent leave neither issue, husband, wife, father, mother, brother nor sister, the estate must go to the next of kin in equal degree, excepting that when there are two or more collateral kindred in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor must be preferred to those claiming through an ancestor more remote."

Ordinarily, the legal heirs of a deceased person are to be determined as of the date of his decease. In this case the legal heirs of Philip P. Weber at the time of his decease would have been determined under the provisions of I.C. § 14–103, sub-section 3, which provides for distribution per stirpes and the heirs would include all the descendants of the brothers and sisters of the deceased by right of representation.

However, the Joint Will and Trust Agreement provides that upon the termination of the trust at Lucy's death, Philip's one-half of the trust estate should go to and vest in "those persons who would be the legal heirs of said Philip at the time of said

Lucy's death * * * pursuant to the provisions of the laws in force at the time of Lucy's death."

■ The legal heirs of a deceased person may be determined as of a different date than that of his death where it clearly appears from the will of the decedent that his intention was that such legal heirs be ascertained as of some later date. In re Buzby's Estate, 94 N.J.Eq. 151, 118 A. 835; Union & New Haven Trust Co. v. Ackerman, 114 Conn. 152, 158 A. 224; Tingier v. Woodruff, 84 Conn. 684, 81 A. 967; In re Stoler's Estate, 293 Pa. 433, 143 A. 121, 59 A.L.R. 1402; Welch v. Howard, 227 Mass. 242, 116 N.E. 492; Oleson v. Somogyi, 90 N.J.Eq. 342, 107 A. 798; Bisson v. West Shore R. Co., 143 N.Y. 125, 38 N.E. 104; In re Senn's Estate, Sur., 164 N.Y.S. 399; 184 App.Div. 936, 170 N.Y.S. 1111; Hostetter v. State, 26 Ohio Cir.Ct.R., 702; In re Dailey's Estate, 268 Pa. 379, 111 A. 922; Craig v. McFadden, Tex.Civ.App., 191 S.W. 203.

■ The Joint Will and Trust Agreement provides that if Belle Weber, wife of the deceased brother, Charles W., shall be indebted to the First National Bank of Kellogg, Kellogg, Idaho, at the time of the distribution of the estate, then the amount of such debt shall be charged to the representatives of Belle Weber and paid to the bank. Also, such instrument provides that if any heir attempts to alienate or otherwise deal with his or her prospective share in said estate that such action on the part of the heir shall not be recognized by the trustees. From these two provisions, respondents contend that the deceased, Philip P. Weber, intended that his heirs should be determined as of the date of his death. Such provisions, however, are only such from which it might be implied that the deceased had the intention that his heirs should be determined as of the date of his death. Such implied intention cannot be allowed to overcome a clearly expressed intention that the heirs should be determined as of the date of the death of Lucy Weber. Wilson v. Linder, 18 Idaho 438, 110 P. 274.

The factual situation having been changed by the death of the brother and sister of Philip P. Weber prior to the death of Lucy Weber, the heirs are to be determined under the provisions of I.C. § 14–103, sub-section 5, instead of sub-section 3.

We have heretofore determined in the case of In re Reil's Estate, 70 Idaho 64, 211 P.2d 407, 410, 19 A.L.R.2d 186, as to who are the heirs under the provisions of I.C. § 14–103, sub-section 5. We quote from such case as follows:

"Moreover, the facts of this case fit exactly the provisions of subsection 5, sec. 14–103, I.C. We, therefore, hold that Fred Reil having died intestate

leaving neither issue, wife, father, mother, brother nor sister, his estate descends to his nieces and nephews, living at his death, per capita, as his next of kin in equal degree."

The judgment of the district court is reversed and the cause remanded with direction to enter judgment directing the probate court to make distribution to the heirs determined under the provisions of I.C. § 14–103, sub-section 5, as proposed by the trustees. Costs awarded to appellants.

TAYLOR, SMITH, KNUDSON and McQUADE, JJ., concur.