THE UNION AND NEW HAVEN TRUST COMPANY, EX-
ECUTOR, (ESTATE OF THEODORE J. ACKERMAN) *vs.*
ERNEST R. ACKERMAN ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 15th, 1931—decided January 19th, 1932.

*J. Dwight Dana,* for the plaintiff.

*Harrison Hewitt* and *Harrison T. Sheldon,* for the defendant C. Purdy Lindsley individually and as executor under the will of Caroline A. Lindsley and as administrator *d. b. n.* of the estate of Ellen D. Ackerman.

*William R. Pitkin,* for the defendant The Fidelity Union Trust Company, administrator *c. t. a.* of the estate of Jonathan A. Coles and of the estate of Emilie S. Coles.

*Ralph H. Clark,* with whom, on the brief, was *Alva Collins,* for the remaining defendants.

HAINES, J.   Theodore J. Ackerman died in New Haven January 8th, 1911, in his ninetieth year.   He married Ellen D. Ackerman prior to 1853, in which year was born their only child, Caroline E. Ackerman, who was therefore, at her father's death, about fifty-eight years of age and was then unmarried.   In 1919 she married C. Purdy Lindsley, who survived her, and she died March 8th, 1931.   She never had nor did she ever adopt a child.   She and her mother, Ellen D. Ackerman, survived the testator, but the widow died in August, 1911.   Besides his wife and daughter, the testator left him surviving four nephews and nieces, children of a predeceased brother, James Hervey Ackerman, viz. Ernest R. Ackerman, Marion S. Ackerman, Maria L. (Ackerman) Rushmore and Lydia P. (Ackerman) Murphy, and a nephew and niece, children of a predeceased sister, Caroline E. (Ackerman) Coles, viz. Jonathan A. Coles and Emilie S. Coles.   The testator left no parents, nor brothers or sisters of the whole or half blood, and no children of brothers or sisters save

as above mentioned. He was possessed of a considerable property and estate, about $350,000, and left a will dated October 27th, 1910, of which the present plaintiff is the executor and the trustee under the trusts therein created. The estate was duly settled by the executor and the property and estate delivered to the plaintiff as trustee and it has since been administered by it in that capacity. After the death of the wife and daughter there remained no lineal descendants of Theodore J. Ackerman, and the only representatives of the Ackerman blood in the second generation were then the nephews and nieces, children of James Hervey Ackerman. After the death of the testator and before that of Caroline E. Lindsley, Jonathan A. Coles and Emilie S. Coles deceased.

The subject-matter of this will was before this court in 1915 and again in 1917. *Ackerman* v. *Union & New Haven Trust Co.*, 90 Conn. 63, 96 Atl. 149, and *Ackerman* v. *Union & New Haven Trust Co.*, 91 Conn. 500, 100 Atl. 22. In both cases the plaintiff sought the construction and interpretation of this will and a definition of her rights thereunder. The existing circumstances and the scope of the actions were such, however, that beyond a decision that the trust continued during the lives of the mother and daughter, no question of essential importance to the determination of the present claims, was adjudicated.

The present action, brought since the death of Caroline E. Lindsley, seeks to determine the construction of that portion of the will of Theodore J. Ackerman which is contained in the fifth, sixth and seventh clauses thereof, which appear in a footnote. We are asked the following questions:

Fifth: All the rest and residue of my property, of whatsoever the same may consist, or wheresoever the same may be situated, I give to The New Haven Trust Company, of New Haven, Connecti-

"(a) Are the 'next of kin' of said Theodore J. Ackerman, as those words are used in Article Seventh of said will, Exhibit A, to be ascertained and determined as of the date of the death of said Theodore J. Ackerman, or as of the termination of said trust; that is, as of the date of the death of Caroline Ackerman Lindsley?

"(b) If the 'next of kin' of said Theodore J. Ackerman, as those words are used in Article Seventh of said will, Exhibit A, are to be ascertained and determined as of the date of the death of said Theodore J. Ackerman, should the testator's daughter, Caroline Ackerman Lindsley, a beneficiary for life of said trust, be excluded in connection with such ascertainment and determination?

"(c) If the 'next of kin' of said Theodore J. Ackerman, as those words are used in Article Seventh of said will, Exhibit A, are to be ascertained and determined

---

cut, in trust, however, to pay over the income to my wife, Ellen D. Ackerman, and my daughter, Caroline E. Ackerman, during their lifetime, share and share alike, and upon the death of either of them, the whole of the income is to be paid the survivor.

Sixth: Upon the death of both my wife and daughter, said trust is to terminate, and I then give the sum of five thousand dollars ($5,000) to the City Missionary Association, of New Haven, now located at number 201 Orange Street; five thousand dollars ($5,000) to the Leila Day Nursery, of New Haven, Connecticut, now located at number 69 Greene Street; five thousand dollars ($5,000) to the Organized Charities Association, of New Haven, Connecticut, now located at 201 Orange Street; five thousand dollars ($5,000) to the Home of the Friendless, of New Haven, Connecticut, now located at 118 Clinton Avenue; ten thousand dollars ($10,000) to my nephew, Ernest R. Ackerman of Plainfield, New Jersey, and ten thousand dollars ($10,000) to my nephew, Marion S. Ackerman of Plainfield, New Jersey.

Seventh: All the rest and residue of my estate, upon the termination of said trust, I desire to have distributed pursuant to the statute laws of the State of Connecticut to my next of kin, with the exception of my niece, Lydia P. Murphy of Plainfield, New Jersey, to whom I give the sum of one dollar ($1.00) only.

as of the date of the death of said Theodore J. Ackerman, is the testator's widow, Ellen D. Ackerman, one of the 'next of kin' of the testator, as those words are used in said Article Seventh?

"(d) To what person or persons and in what proportions or amounts should the property now in the hands of the plaintiff as trustee, constituting the rest and residue of said estate, after the payment of the pecuniary legacies given in and by Article Sixth, now be distributed by the plaintiff as trustee?"

All those having a possible interest under the will of Theodore J. Ackerman are represented. They are of three classes: (1) Those representing the estates of the widow and daughter, (2) those representing the nephews and nieces who are children of the deceased brother, James Hervey Ackerman, and (3) those representing the estates of the deceased nephew and niece who were children of the deceased sister Caroline E. Coles.

The claimants of the first class say that the respective estates of the wife and daughter are entitled to the entire residue of the testator's estate, because the "next of kin" must be determined as of the date of the death of the testator and the widow and daughter were then both living.

The claimants of the second class say, however, that "next of kin" must be determined, not as of the date of the death of the testator, but at the date of the termination of the life estates; that as the two children of Caroline E. Coles had at that time deceased without issue, the surviving children of James Hervey Ackerman were then the only next of kin and that they are therefore entitled, excluding Lydia, to the entire residue.

The claimants of the third class say that the "next of kin" must be determined as of the date of the death

of the testator, but that the widow and daughter, who were life tenants, are to be considered as excepted from the designation to conform to the intent of the testator, and the residue should therefore be divided into two equal parts, one part going to the estates of the deceased children of Caroline E. Coles and the other part to the children of James Hervey Ackerman, not including Lydia P. Murphy, who was expressly excluded by the will.

It is a matter of fundamental importance, therefore, to determine whether the wife and daughter of the testator, if they survived him, were intended by him when he provided in the seventh clause of his will that "all the rest and residue of my estate, upon the termination of said trust, I desire to have distributed pursuant to the statute laws of the State of Connecticut to my next of kin with the exception of my niece, Lydia P. Murphy of Plainfield, New Jersey, to whom I give the sum of one dollar." Claimants of the first class take the affirmative, and those of the second and third classes the negative of this question.

Owing to the varieties of language used by testators and to the differing circumstances surrounding them and the cardinal rule of intent which must govern the interpretation of a will, most of our canons of testamentary construction are necessarily flexible. It results that, save in the exceptional case of identity of language and circumstance, there is not that perfect analogy which will render the interpretation of one will a sure guide for the interpretation of another. The general tendency in this country is toward a relaxation of absolute rules of construction where the ascertained intent of the testator can only thus be made effectual.

The most inflexible rule of testamentary construction and one universally recognized is that the inten-

tion of the testator should govern the construction, and this intention is to be sought in the language used by the testator in the light of the circumstances surrounding and known to him at the time the will was executed.

At the time he prepared his will, the testator was enjoying the life interest of a trust fund approximating $300,000, created by a deceased brother Warren Ackerman, with a power of appointment, and in default of the exercise of that power by him, the corpus of that fund went by the provisions of his brother's will to the testator's daughter Caroline E. Ackerman. He refrained from exercising the power and thus insured the receipt of the fund by his daughter. He also knew that she had the enjoyment of a like fund of $300,000 from his brother Warren Ackerman, with a like power of appointment, and was thus well provided for. To his wife he gave his home and a legacy of $20,000, thus providing what he may fairly have thought a competence for her. This may well explain why he gave them only the income of his residuary estate.

The testator recognized, of course, that his line of descent would end with them; there was no human probability of there being any descendants of his to whom the corpus of this fund could go. If by the term "next of kin" the testator intended the wife and daughter, he must have realized that the only effect of such a provision would be to benefit their estates and that it could never benefit them personally, since the trust continued to the death of the survivor. He must also have realized that such a provision might eventually carry the fund by will or inheritance to those who were strangers and unknown to him. Such an intent to benefit strangers and unknown parties in preference to blood relatives, would be an unnatural

disposition. Natural instincts do not prompt action of that sort in favor of strangers. On the other hand, if he had desired his wife and daughter to have the corpus of his estate after the life tenancy, it would have been a simple thing to say so. In one case, where it was claimed that a daughter Lizzie, who was a life tenant, was also one of the "next of kin," we said that if it were so held "she could at any time have transmitted it by will or descent, but she could not herself enjoy it; and her power of transmission might be exercised in favor of strangers, to the exclusion of the blood of the testator. The testator, we hold, intended by gift over to his next of kin to exclude Lizzie from that class." *Close* v. *Benham,* 97 Conn. 102, 109, 115 Atl. 626. However, if the intention of the testator was to ensure that the corpus of his estate should go to those of the Ackerman blood, which would be a natural disposition, he necessarily had reference to the nephews and nieces who would, when the life estates were ended, be the only representatives of the Ackerman blood. That he was not unmindful of them is conclusively shown by other provisions of the will wherein three of them are referred to by name. The mere reading of this seventh clause shows, and we think conclusively, that he had his nephews and nieces in mind in disposing of the fund to next of kin after the termination of the life estates, for he gives it "to my next of kin, with the exception of my niece, Lydia P. Murphy, . . . to whom I give the sum of one dollar only." We can conceive of no other reasonable interpretation of this language than that he intended to give the fund to nephews and nieces as a class with the exception of his niece Lydia. If the present claims of the estates of the mother and daughter, claimants of the first class, be sustained, this portion of paragraph seven would have no intelligent purpose or effect other than to pro-

vide for their decease before his own. The context shows, however, that that was not the purpose, because the words have reference to the situation at the "termination of said trust." This residue of the testator's estate was nearly equal in amount to that which his brother had given him the enjoyment of. A similar amount would now go to his daughter absolutely from his brother's estate, and she already had from that estate a life interest in a similar amount. It is significant that family preferences for kindred of blood, are shown by all these circumstances, and it was entirely natural that this testator should prefer to have his own funds go to kindred of blood rather than to strangers. We attach much significance to this language excluding one niece as indicative of the testator's intent with regard to the class to which she belonged. He must have realized also that if the fund was given to his wife and daughter he would thus put it in the power of one or both to pass it all by will to the very niece whom he so specifically excluded from its enjoyment.

It is of course true that, upon the death of the testator, the wife and daughter, under the statute laws of this State, would have inherited his property had he died intestate. It is also true that it is a general rule, subject, however, to exceptions where a disclosed intent to the contrary appears, that where a will gives to the next of kin or heirs at law, these are to be determined as of the date of the death of the testator; it has also been held that the mere fact that life tenants are also next of kin, does not necessarily exclude them from the latter designation. *Rand* v. *Butler,* 48 Conn. 293; *Thomas* v. *Castle,* 76 Conn. 447, 56 Atl. 854; *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 135 Atl. 555. In the opinion in the latter case it is said: "There is nothing in the terms of the will to suggest that the testator intended that the ascertainment of the 'heirs

of the blood of my father' . . . should be postponed until the termination of the trust," thus suggesting the flexibility of the rule. The holding that a life tenant might also take as next of kin, is always subject to the paramount consideration of the testator's intent as determined. *Nicoll* v. *Irby*, 83 Conn. 530, 77 Atl. 957; *Wilde* v. *Bell*, 86 Conn. 610, 87 Atl. 8; *Close* v. *Benham*, 97 Conn. 102, 115 Atl. 626; *Gross* v. *Hartford-Connecticut Trust Co.*, 100 Conn. 332, 123 Atl. 907. We have also said that "wherever a life use is given, with remainder over to his issue, and, failing such, to the testator's children, heirs or next of kin, or other class, we think it must be presumed that the testator intended to exclude the life tenant from this class, unless a contrary intent is manifest in the language of the will." *Close* v. *Benham*, 97 Conn. 102, 109, 115 Atl. 626. See also *Nicoll* v. *Irby*, 83 Conn. 530, 77 Atl. 957; *Gross* v. *Hartford-Connecticut Trust Co.*, 100 Conn. 332, 123 Atl. 907.

The considerations we have discussed constitute, in their cumulative effect, an imperative negation of his intent to include the wife and daughter in the term "next of kin."

This brings us to a second question, the answer to which practically determines the remaining questions propounded in this case. Are the "next of kin" referred to in paragraph seven, to be determined as of the date of the testator's death or at the termination of the life estates? Contending for the earlier date, the claimants of the third class claim that the wife and daughter being excluded, the title to the residuum vested in the nephews and nieces then living, excluding Lydia P. Murphy, thus giving the estates of the deceased nephews and nieces a share of the fund. The claimants of the second class, however, insist that the determination of the next of kin must be made at the

termination of the life estates and that the nephews and nieces composing that class, being the only ones then living, are, with the exception of Lydia P. Murphy, entitled to the whole fund.

The latter class of claimants rest their contention largely upon our holding in *Tingier* v. *Woodruff,* 84 Conn. 684, 81 Atl. 967. In our earlier cases, preceding *Close* v. *Benham,* it was necessary, in order to avoid intestacy under the existing statute of perpetuities, to hold that the class must be determined as of the date of the death of the testator. The case of *Tingier* v. *Woodruff* was decided after the repeal of this statute, and in its facts bears an exceptionally close analogy to the case before us.

In that case the testator gave the residue of his estate to his wife and daughter and granddaughter for their lives, and then provided, "upon the decease of the last survivor I will and direct that all my property be divided among my legal heirs according to the law of the distribution of intestate estate in this State." The language of the Ackerman will is, "All the rest and residue of my estate, upon the termination of said trust, I desire to have distributed pursuant to the statute laws of the State of Connecticut to my next of kin," and the close resemblance in form and intent is at once apparent. We said in the *Tingier* case, that the share of the life tenants was "confined to the enjoyment of the income to the death of the last survivor . . . and cannot have been intended to include the principal. Confirmation of this view is found in the gift of all property to his legal heirs 'upon the decease of the last survivor.' The corpus of the fund is thus preserved intact until the time appointed for distribution, which is expressly stated to be 'upon the death of the last survivor.' Whether issue be born or not, the division of the principal is to take place upon

the decease of the last survivor, and among the legal heirs of the testator. The legal heirs take at the death of the last survivor, rather than at the death of the testator. The language of the will compels this construction, and any other construction would defeat the main purpose of the testator· to benefit by his bounty his own blood to the exclusion of strangers, and to hold the principal fund intact until that time. If the heirs existing at the decease of the testator took, on the death of the last survivor, a large share of this estate would go to strangers to the testator's blood, through Nellie's [the daughter's] disposition of her estate, for she would have been an heir at this time. 'If a class of takers is not clearly identified, kindred of the blood are properly favored over kindred by affinity.' Schouler on Wills (3d Ed.) § 26. The statute against perpetuities was repealed prior to the death of the testator, and the common-law rule against perpetuities does not forbid a devise to one's legal heirs to take effect upon the death of a life tenant, even though one or more of the heirs be born subsequent to the death of the testator. *Healy* v. *Healy,* 70 Conn. 467, 471, 39 Atl. 793. A final question remains: Who will be the legal heirs on the decease of Etta, the last survivor? The words 'legal heirs' will be treated as words of limitation rather than of purchase. The wife, daughter, and granddaughter are given a life use merely. The principal is not divisible until the death of the last survivor. Very clearly they were intended to be excluded from participation in the principal. The testator intended the division to be made among those who were his heirs on the decease of the last survivor. This construction satisfies his language and is the only construction permissible, for it is the only one which will carry out the purpose and plan of his will." *Tingier* v. *Woodruff, supra,* pp. 689, 690.

What we there said applies *mutatis-mutandis* to the will of Theodore J. Ackerman and expresses what we feel to have been the clear purpose and intent which he had when he used the language he did. Moreover, at the death of the testator his wife and daughter, if they survived him, would have been his next of kin, and if, in the use of those words, the testator did not intend them, as we have seen, it almost necessarily follows that the determination of the persons falling within that class must have been intended to be made as of some other time, which would be the termination of the trust. It results that the corpus of the estate goes to the children of James Hervey Ackerman (excepting Lydia). Significant language tending to confirm the above conclusion, appears in the beginning of the sixth paragraph. After creating the life estates for the wife and daughter, by the fifth paragraph, he says: *"Upon the death of both my wife and daughter,* said trust is to terminate, and I *then* give . . ."* After enumerating these gifts he, in the seventh paragraph, disposes of what is left to his next of kin. The giving of the special legacies and the disposition of the residue were contemporaneous acts, all being made as of the time the trust ended.

The request made to us is met by answers to questions (a) and (d), which are as follows:

(a) The next of kin are to be determined as of the date of the termination of the trust; (d) the property now in the hands of the trustee should be distributed to the claimants of the second class, excluding Lydia P. Murphy, viz. Ernest R. Ackerman, Marion S. Ackerman, and Maria L. Rushmore.

No costs will be taxed in this court.

In this opinion the other judges concurred.