THE BRIDGEPORT CITY TRUST COMPANY, ADMINIS-
TRATOR, (ESTATE OF SAMUEL C. TRUBEE) *vs.*
J. CUYLER SHAW, EXECUTOR, ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 12th—decided July 5th, 1932.

*Paul L. Miller,* for the plaintiff.

*Philo C. Calhoun* and *John C. Thompson,* for the defendant Sanford, administratrix, *et als.*

*Robert H. Gould,* with whom, on the brief, was *Louis K. Gould,* for the defendant Kippen, executor (estate of David Trubee).

*Edward L. Kelly,* for the defendant The Bridgeport City Trust Company, administrator of various estates, *et al.*

*Samuel F. Beardsley,* for the defendant The Bridgeport City Trust Company, executor (estate of Mary C. Trubee).

HAINES, J. By the second paragraph of the will of Samuel C. Trubee, who died in Bridgeport December 4th, 1900, he gave one half of his estate to his wife, Mary C. Trubee, "to her and her heirs absolutely and forever," after providing specifically for the disposition of certain personal effects; and the third paragraph of the will read as follows: "I give and bequeath the use, income and improvement of the remaining one half of my estate to my said wife Mary C. Trubee for and during her natural life and upon her decease said one half is to be distributed according to the laws of distribution of the State of Connecticut."

Mary C. Trubee was named as executrix and she duly qualified and acted during her lifetime, and upon her death on January 28th, 1931, the plaintiff was appointed her successor as administrator *d. b. n. c. t. a.* On July 31st, 1931, the amount of the estate of which his wife had enjoyed the life use, and remaining for distribution, was $56,630.44 as shown by an inventory filed and accepted in the Court of Probate. The testator left no children or representatives of children, but at his death his heirs at law were a sister, Harriet Trubee Knapp, who survived the testator but predeceased the life tenant; and a brother, David Trubee, who also survived the testator but predeceased the life tenant; a niece, Frances Elizabeth Somers, the daughter of Elizabeth Trubee Hoile, a deceased sister of the testator; Carrie C. Knapp, Harriet T. Garlick, and Emma D. Knapp, nieces, and Rufus Knapp, nephew, children of Caroline Trubee Knapp, a deceased sister of the testator; Frederick Trubee and S. Curtis Trubee, nephews, sons of William Trubee, a deceased brother of the testator; Jessie A. Bishop and Julia A. Gibney, grandnieces, and William A. Trubee, grandnephew, children of a predeceased nephew, William E. Trubee.

The three questions raised by this reservation are all involved in the interpretation of the third paragraph of the will and are stated of record as follows: "(1) Whether under the paragraph in said Will noted as 'In the Third Place' the distributees should be ascertained as having a vested interest at the date of the death of the testator? (2) Whether, if question one is answered in the affirmative, the widow, Mary C. Trubee, had any vested interest in the remainder interest of said Trust Fund after her life estate terminated, to which her personal representatives would be entitled and which in turn should be distributed by virtue of the terms of her own last Will and Testament? (3) Whether the vesting of the remainder interest in said Trust Fund is postponed until the death of the widow and the distributees should be ascertained to be the heirs at law and next to kin of Samuel C. Trubee who were then living?" These questions can best be discussed under two heads: (a) Does the estate of the widow share in the remainder estate and (b) When and in whom did the remainder interest vest?

All parties to the reservation save the executors of the estate of the widow, are agreed that her estate takes no interest in the remainder estate, and the executors make no contest in this court and file no briefs in support of the opposite position taken in the pleadings. Nevertheless the question does appear in the reservation and we give it consideration.

Bearing in mind that "the pole star of testamentary interpretation" is the intent of the testator, one of the first questions to be decided is, whether the testator intended to include the estate of his wife when he used the expression "distributed according to the laws of distribution of the State of Connecticut."

The "laws of distribution of the State of Connecticut" at the time this will was executed, and which we

must assume were known and understood by the testator, were contained in General Statutes, §§ 630—632, Rev. 1888, and § 623, Rev. 1888, as amended by Public Acts of 1889, Chapter 41 and Public Acts of 1895, Chapter 217, those sections later being, respectively, §§ 396—398 and § 391, Rev. 1902.

In § 391 it was provided that the surviving wife if there was no will and if there were no children, should take all the estate absolutely to the extent of $2000 and one-half absolutely of the remainder of the estate, and "where the husband has, by will, devised or bequeathed a portion of his property to his surviving wife, . . . such provision shall be deemed to be in lieu of the share herein provided for, unless the contrary shall be expressly stated in the will, or shall clearly appear therein; but in any such case the party shall have . . . her election whether to accept the provision of such will or take such statutory share." Section 398 provided that after the share of the wife was distributed, then if there were no children or representatives of children and no parent, the estate shall be distributed "equally to the brothers and sisters of the whole blood, and those who legally represent them . . ."

One contention now made is that the present testator having provided for his wife by this will, it must be assumed that she has accepted that provision in lieu of any share in the remainder by reason of the foregoing provision in § 391. The unsoundness of this claim lies in the fact that the will makes no specific provision for the wife out of the remainder estate, which is the only portion of the testator's estate subject to these statutory provisions. If the testator had given her a specific portion of this remainder by his will, she would have been put to her election between that and the share which the statute would give her.

We have not infrequently been called upon to construe testamentary provisions somewhat similar to that in the will before us, such as "among my legal heirs according to the law for the distribution of intestate estate in this state;" *Tingier* v. *Woodruff,* 84 Conn. 684, 81 Atl. 967; to "my heirs at law;" *Wilde* v. *Bell,* 86 Conn. 610, 87 Atl. 8; *Gross* v. *Hartford-Connecticut Trust Co.,* 100 Conn. 332, 123 Atl. 907; "next of kin;" *Close* v. *Benham,* 97 Conn. 102, 115 Atl. 262; *Union & New Haven Trust Co.* v. *Ackerman,* 114 Conn. 152, 158 Atl. 224.

An examination of those decisions will disclose the care with which we have considered all the circumstances surrounding the testator, in our endeavor to carry out his real purpose and intent, and that we have consistently refused to recognize as necessarily conclusive, the strict literal meaning of the words employed in the will; for it may be said with truth of a will as of a statute, that the letter cannot prevail against a plainly indicated intent. *Brown's Appeal,* 72 Conn. 148, 44 Atl. 22.

In *Thomas* v. *Castle,* 76 Conn. 447, 56 Atl. 854, following *Rand* v. *Butler,* 48 Conn. 293, we held that in the absence of language or circumstances indicating a clear intention to the contrary, a life tenant who was also an heir could not be excluded from his share in a remainder interest which was to be distributed according to the statutes of distribution. In the four cases above referred to, however, the language of the will and the circumstances surrounding the testator were such that there appeared a clear intent on the part of the testator that the life tenant should not take a share in the remainder as one of the heirs at law. In the present case the testator was ninety years of age and his wife was fifty-five. They were childless and it was clear that in the absence of a will his

property would pass to his wife and his blood relatives, the former taking $2000 and one half of the remainder of his estate absolutely and the blood relatives taking the balance. This was obviously contrary to his wishes. He had a living brother and a living sister, and nephews and nieces, children of a deceased brother, and of two deceased sisters. Under a statutory distribution, therefore, more than one half his estate would have gone to those not of the blood of the testator. Under these circumstances he prepares this will providing, first, that his personal effects, having a sentimental rather than a cash value, should go to his widow. Then he divides his estate into two equal parts, giving one part to his wife absolutely, thus diverting it from his own blood to her heirs or testamentary beneficiaries. Very properly and naturally desiring that she have the full enjoyment of all his property while she should live, he gives her a life estate in the other one-half and adds "upon her decease said one half is to be distributed according to the laws of distribution of the State of Connecticut."

Since the remainder estate was not to go into possession of the heirs until after the death of his wife, it is obvious that she could never have owned any of it personally, and a literal interpretation of his language would require us to hold that he intended to have her heirs or beneficiaries, already having had more than one half his entire estate, come in with his own blood relatives in the division of the other half. Under the circumstances this would be a highly improbable and quite unnatural assumption to make. We regard the underlying purpose and plan of the will to be an equal division between his wife and her relatives and beneficiaries and his own blood relatives, and if the literal interpretation of his final words was carried out under the doctrine stated in *Thomas* v. *Castle,* this intent

would be defeated. We therefore hold this case distinguishable, it clearly appearing to us that the testator did not intend the estate of his wife to share in the remainder, but it is to be distributed to the other heirs in accordance with the statute.

It remains to determine the date as of which the distributees of the remainder estate under the third clause of the will are to be determined. A rule of construction well stated in the syllabus of an early case in this State, *Dale* v. *White,* 33 Conn. 294, for the determination of the intent of the testator in this regard, has been uniformly recognized and applied under analogous circumstances, in our later decisions: "It is a well settled rule of construction, that a legacy given to a person or a class, to be paid or divided at a future time, takes effect in point of right on the death of the testator;" and "where, in case of such a legacy, words of contingency or condition are used, which may be construed as applying either to the gift itself or to the time of payment, courts are inclined to construe them as applying to the time of payment, and to hold the gift as vested rather than contingent."

In the will before us the testator gives his wife the use and income of the half of his estate "for and during her natural life and *upon her decease said one half is to be distributed* according to the laws of distribution of the State of Connecticut." A similar question was carefully considered in the case of *Close* v. *Benham, supra,* and we said, at pages 103, 104: "We have uniformly held that unless the will sufficiently expresses a contrary intent, a limitation over, after a life estate, . . . to the heirs, or heirs at law, . . . are gifts to a class, and vest in point of right upon the testator's death, although their right of possession is postponed until the termination of the life estate. We

have adopted this rule in the belief that it leads to the early vesting of estates, and will carry out the probable intent of the testator, where the will indicates no contrary intent. *Norton* v. *Mortensen,* 88 Conn. 28, 89 Atl. 882; *Allen* v. *Almy,* 87 Conn. 517, 89 Atl. 205; *Bartram* v. *Powell,* 88 Conn. 86, 89 Atl. 885; *Wilde* v. *Bell,* 86 Conn. 610, 87 Atl. 8; *Nicoll* v. *Irby,* 83 Conn. 530, 77 Atl. 957." We have also held that no implication arises, from the creation of a life estate in property, that the testator intended the postponement of the vesting to the date of the termination of the life estate. *Thomas* v. *Castle,* 76 Conn. 447, 452, 56 Atl. 854. These rules have been consistently recognized and applied in our later decisions, as illustrated by *First National Bank* v. *Somers,* 106 Conn. 267, 272, 137 Atl. 737; *Gaffney* v. *Shepard,* 108 Conn. 339, 344, 143 Atl. 236; *Trowbridge* v. *Townsend,* 112 Conn. 104, 151 Atl. 345; *Colonial Trust Co.* v. *Waldron,* 112 Conn. 216, 152 Atl. 69; *Union & New Haven Trust Co.* v. *Ackerman,* 114 Conn. 152, 158 Atl. 224; although, as was true in the last-named case, the language of the will and the indicated purpose of the testator sometimes compels a holding that the vesting took place at the termination of the life estate.

There is certainly nothing in the language of the present will which compels a deviation from the general rule and a consideration of the circumstances surrounding the testator leads to the same result. The testator was ninety years of age and the will was made two days before his death. From the language he there used we must assume he was aware of the provisions of the statutes of distribution then in force, and concluded that they expressed his own wishes in specifying the persons to whom the distribution of the remainder estate should be made. He referred to it

as his own wish. We cannot assume that, notwithstanding this fact, he intended the distribution to be to such persons as might be named in a statute of distribution which might be in force at the death of his wife who was thirty-five years his junior. On the contrary, we regard it as obvious that the beneficiaries he had in mind were those then living and known to him to be the same as those named in the statutes of distribution then operative. We are thus in full accord with the reasoning in *Norton* v. *Mortensen,* 88 Conn. 28, 35, 89 Atl. 882: ". . . it is scarcely conceivable that he could have entertained any desire that survival until the death of his wife should be a controlling factor in determining the extent of his benefactions in favor of his children . . . all, in so far as appears, equally near and dear to him. It would be strange indeed if the uncertainty of results which would attend such a disposition of his property, and the possibilities inhering in it, were within his testamentary scheme, upon its face so simple and so equal in its treatment of the natural objects of his bounty. The use by the testator of the expression 'upon the decease of my said wife,' in connection with the gift of the remainder, is not indicative of an intent to postpone the vesting in right. Of this formula we have heretofore had occasion to say that it is construed to relate to the time of taking . . . possession and not to the time of taking effect in interest. *Austin* v. *Bristol,* 40 Conn. 120, 133; *Johnson* v. *Edmund,* 65 Conn. 492, 33 Atl. 503." This testator knew who his beneficiaries were at the time he made his will; he could not know who they would be at some later period, and we cannot assume that he would be willing to leave the determination of the objects of his bounty to some statute to be passed in the unknown future.

We answer the first question, "Yes," and the other two, "No."

No costs will be taxed in this court.

In this opinion the other judges concurred.