HARRY R. SHERWOOD, ADMINISTRATOR (ESTATE OF DAVID BURR DISBROW) *vs.* ELLA F. HULL ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

See *Wildman's Appeal,* 111 Conn. 683.

Argued June 9th—decided August 1st, 1933.

*Harry R. Sherwood,* for the plaintiff.

*Edward J. McAlenney,* for the defendant Clifford B. Wilson, guardian *ad litem* for Kenneth W. Wildman, defendant.

*Hereward Wake,* for the defendants Ella F. Hull *et als.*

*John T. Dwyer,* for the defendant Ella J. Disbrow.

BANKS, J.   David B. Disbrow died in 1904 leaving a widow and three children, Ella, Elmer and Clara. In his will, executed February 8th, 1896, he left his entire estate to his widow for life, and upon her death to his children in equal portions for life, with the provision that in the division of the estate the homestead should be in the portion assigned to his son Elmer. The widow died about a year after the testator, and in a mutual distribution of the estate a life estate in the homestead was set out to Elmer.   The daughter, Clara J. Wildman, died in August, 1928, leaving an adopted son, Kenneth C. Wildman.   The son Elmer died in February, 1930, leaving no children and a widow, the defendant Ella J. Disbrow, to whom he had been married subsequent to the execution of his father's will but prior to the latter's death.   The other daughter, Ella F. Hull, still survives, and has five surviving children.   All of the questions asked involve the deter-

mination of the ultimate disposition of the homestead under the terms of paragraphs Fifth and Sixth of the will, which read as follows:

"Fifth. When either said Ella, Elmer or Clara shall decease after gaining possession of said part, then it shall become the actual property of their lineal descendants or if there be none then it shall go to their nearest of kin.

"Sixth. I direct that my present homestead property shall not be sold or conveyed during the life time of either of my said children, but shall be after their decease the actual property of some of their lineal descendants or if there be none, then to the nearest of kin."

The life use of the homestead went to Elmer, being included in the one-third part of the estate left him for life. Upon his death without lineal descendants, his third part of the estate, including the homestead, under the Fifth paragraph of the will, if that is controlling, vested in his nearest of kin. His widow, Ella J. Disbrow, and his sister, Ella F. Hull, both claim to be the person here designated as his "nearest of kin." In the determination of these claims the intention of the testator, to be ascertained from the language of the will read in the light of the surrounding circumstances, is of course controlling. In *Wildman's Appeal,* 111 Conn. 683, 151 Atl. 265, we were called upon to determine the construction to be placed upon the words "lineal descendants" and "nearest of kin" as used by this testator in this paragraph of the will, in passing upon the right of the adopted son of Clara to take under it. We there stated that we found nothing in the will to indicate that the testator used these words with any other meaning than to connote relationship by blood, and said (p. 688): "These provisions, and the entire plan of the will, disclose an inten-

tion of the testator to confine the objects of his bounty to those of his own blood. Nowhere in the will, or in the circumstances surrounding the testator at the time of its execution, do we find any indication that he contemplated that a stranger to his blood should have any share in his estate. Under such circumstances there are no facts from which could be drawn an inference that he intended such result." This intention of the testator to confine the objects of his bounty to those of his own blood is even more clearly apparent as to the homestead, the final disposition of which is here involved. The provisions of the Sixth paragraph of the will clearly show an intention that the homestead should remain in the line of direct descent and vest in the lineal descendants of his children if any there were.

The Seventh paragraph of the will contains a direction that no husband of either of his daughters shall have any control of any of the property of his estate. In the brief of Ella J. Disbrow it is argued that, as she stood in the same legal relationship to the testator as the husbands of his daughters, the fact that the will did not expressly exclude her as well as them from any share in the estate indicates an intention on the part of the testator that she should share in his estate. There would be more force in this contention if it did not appear that, at the time the will was executed, the son Elmer was unmarried. In so far as this provision may have any present significance it would seem rather to constitute a further indication of the intention of the testator that no part of his estate should go out of the line of blood relationship. *Wildman's Appeal, supra,* p. 688.

In *Close* v. *Benham,* 97 Conn. 102, 115 Atl. 266, the testator left two thirds of his estate in trust for the life use of his two daughters, upon the death of either

one half of the fund to go to her issue, and, failing such issue, to the testator's "next of kin." A son, to whom was left the other one third of the estate, died after the death of the testator leaving issue, and subsequently one of the sisters died without issue. It was held that the issue of the son, who would have taken under the statutory distribution of the testator's estate if he had died intestate, but who was not next in the line of consanguinity, was entitled to share the fund with the surviving daughter of the testator, it appearing that, to hold otherwise, would have destroyed the scheme of equality in the will and been contrary to the manifest intent of the testator. In *Union & New Haven Trust Co.* v. *Ackerman,* 114 Conn. 152, 158 Atl. 229, the testator left the residue of his estate in trust for his wife and daughter during their lives, upon the termination of the trust the residue to be distributed pursuant to the statute laws of the State to his next of kin, with the exception of a named niece. Though recognizing that life tenants might also take as next of kin, we held that the provisions of the will, and the circumstances under which it was executed, negatived an intention by the testator to include his wife in the term "next of kin." The interpretation of the language used in one will is rarely of controlling significance in the interpretation of similar language in another will. In each case the controlling question is the intention of the particular testator whose will is the subject of construction, and other canons of testamentary construction are of importance only to the extent that they may be helpful in the ascertainment of that intention.

A construction of the will which would permit the widow of Elmer to take the homestead as his nearest of kin would not, in our opinion, accord with the intent of the testator that it should be kept in the line of

those who were related to him by blood. By that test Ella must be considered as the "nearest of kin" of her brother Elmer, as the phrase is used in the Fifth paragraph of the will.

There remains for consideration the construction of, and effect to be given to, the Sixth paragraph of the will, which directs that the homestead shall not be sold during the lifetime of either of the children, but shall, after their decease, be the property of some of their lineal descendants, or if there be none, then to the nearest of kin. Read by itself, as an attempt to make a final disposition of the fee in the homestead, it might be difficult to determine the intention of the testator, and whether the language used would accomplish what he apparently had in mind. It is apparent that this will was drawn by a person who was not a skilled draftsman and was not familiar with legal terms. The provisions of the Sixth paragraph should be read in connection with those of the Fifth paragraph. The testator had given his son Elmer the life use of one third of his estate, and in the Fifth paragraph of the will provided that upon his death his portion should go to his lineal descendants, or if there were none, to his nearest of kin. He then added the provision in the Sixth paragraph directing that the homestead should not be sold or conveyed during the lifetime of either of his children, followed by a repetition of the language of the Fifth paragraph as to its final disposition except that the phrase "some of their lineal descendants" is used instead of "lineal descendants," and the phrase "the nearest of kin" in the place of "their nearest of kin."

As already indicated, this direction that the homestead should not be sold during the lifetime of any of the testator's children, but should, after their death, become "the actual property of some of their lineal

descendants," clearly discloses an intention that it should remain in the line of direct descent. If the fee vested in the surviving daughter, Ella F. Hull, as it would under the Fifth paragraph, standing alone, that intention might be frustrated since she might dispose of it by will otherwise than to her lineal descendants, and her husband, if he survived her, would be entitled to an interest in it contrary to the testator's intention expressed in the Seventh paragraph of the will. In fact Ella does not claim the fee, but does claim a life estate with remainder to her children. In our opinion such disposition of the homestead would accord with the manifest intention of the testator. Elmer having died without children, and it having been determined in *Wildman's Appeal* that the adopted son of Clara could not take as a "lineal descendant," the children of Ella F. Hull answer the description of those in whom the testator intended that the "actual property" or fee of the homestead should vest.

A sufficient answer to all of the questions propounded is that Ella F. Hall, as the nearest of kin of her brother Elmer, is entitled to the life use of the homestead, and that her lineal descendants are entitled to the fee of the same subject to her life estate.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.