THE NEW BRITAIN NATIONAL BANK, TRUSTEE
(ESTATE OF MARY S. B. RICE) *vs.*
STUART W. PARSONS ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued January 3d—decided February 6th, 1934.

*Donald Gaffney,* for the plaintiff.

*James Wayne Cooper,* for Stuart W. Parsons, individually and as executor.

*Henry P. Bakewell* and *Hugh M. Alcorn, Jr.,* for George P. Spear, administrator.

*Josiah H. Peck,* for Josie B. Jones.

*Frederick H. Waterhouse,* for Marjorie G. Regan, individually and as executrix.

AVERY, J.   On January 14th, 1912, the testatrix, Mary S. B. Rice, died leaving a will executed May 26th, 1908, which was duly admitted to probate by the Court of Probate for the district of Berlin.   The eleventh paragraph of the will provided:   "All the rest and residue of my estate I give to my Trustee, hereinafter named, in trust for the following purposes: To invest and reinvest the same as he may deem wise and as such Trustee to pay over to my husband Arthur W. Rice the net income thereof during his life time.   At his death said residue is to be distributed among my natural heirs in accordance with the provisions of the Statute Laws of this State.   The provisions which I have made for my husband in Articles 10 and 11 are to be in lieu of his statutory rights." Her husband survived her and died July 17th, 1933.

The questions upon which our advice is requested are:   (a) Are the "natural heirs" of the testatrix to be ascertained as of the date of her death or as of the date of the death of the life tenant; and (b) who is entitled to the trust estate created by this paragraph, and in what proportions?

At the time of the making of her will and at the time of her death, Mrs. Rice's husband was living; also two brothers and one sister.   Her parents had died, and she had no issue surviving.   Her sister, Louise B. Parsons, had a son, Stuart W. Parsons; her brother, George S. Babcock, had four children—Frederick S. and Edward B. Babcock and Josie B. Jones and Marjorie Babcock; and her brother, Edward G. Babcock, had a wife, Carrie L. Babcock, but no chil-

dren. At the time of the death of the testatrix, her natural heirs were her sister, Louise B. Parsons, and her brothers, Edward G. and George S. Babcock. Louise B. Parsons died testate August 7th, 1921, and her son, Stuart W. Parsons, is living and is executor of her will. Edward G. Babcock died November 17th, 1918, intestate, leaving his wife, Carrie L. Babcock, who died April 4th, 1926. George P. Spear is administrator of both estates. George S. Babcock died testate March 13th, 1927, leaving the four children above named. Of them, Frederick S. Babcock died testate January 18th, 1919, without issue, and Edward B. Babcock died in September, 1913, without issue. If the natural heirs are to be determined at the expiration of the life estate, they would be Stuart W. Parsons, surviving son of Louise B. Parsons, and Josie B. Jones and Marjorie Gloriant Regan, surviving children of George S. Babcock. Inasmuch as the provisions of the will for her husband were stated to be "in lieu of his statutory rights," no question is involved as to any interest of the life tenant in the remainder, and no claim is made to that effect.

The general rule is that unless the will expresses a contrary intent, a limitation over, after a life estate, to the heirs or heirs at law is a gift to a class, and vests in point of right upon the testator's death although their right of possession is postponed until the termination of the life estate. *Bridgeport City Trust Co.* v. *Shaw,* 115 Conn. 269, 276, 161 Atl. 341; *Mead* v. *Close,* 115 Conn, 443, 445, 161 Atl. 799; *Trowbridge* v. *Townsend,* 112 Conn. 104, 111, 151 Atl. 345. "We have adopted this rule in the belief that it leads to the early vesting of estates, and will carry out the probable intent of a testator, where the will indicates no contrary intent." *Close* v. *Benham,* 97 Conn. 102, 103, 104, 115 Atl. 626. In some cases, however, the will,

construed in the light of the circumstances surrounding the testator, has clearly indicated a purpose to postpone the vesting of the remainder until the termination of the life estate. In *Union & New Haven Trust Co.* v. *Ackerman,* 114 Conn. 152, 164, 158 Atl. 224, the language of the paragraph directly involved was quite similar to that used in the present case. In another paragraph of the will, however, language appeared clearly indicating an intent on the part of the testator to postpone the vesting until the expiration of the particular estate; and such intent was also evident from the plan of the will as a whole. In *Tingier* v. *Woodruff,* 84 Conn. 684, 81 Atl. 967, the provisions of the will as a whole showed clearly such an intent.

The paragraph of the will in question upon its face certainly expresses no intent that the vesting of the remainders should be postponed until the death of the life tenant. The language of the provision is strikingly similar to that of *Bridgeport City Trust Co.* v. *Shaw, supra.* If we examine the will, it appears that, by the first paragraph thereof, the testatrix left to her brother George $3000, and, by the second paragraph, to her sister Louise B. Parsons the sum of $4500. The third paragraph contained a bequest to her brother Edward of $4500; and, in the event of his death prior to the death of the testatrix, if his wife was then living, the sum was given to the trustee to pay to her the income during her lifetime, and at her death the sum was to be divided between the testatrix' brother George and sister Louise; and in case neither Edward nor his wife survived the testatrix, the sum was to be equally divided between George and Louise. The fourth paragraph gave $500 to Carrie L. Babcock, wife of the testatrix' brother Edward; and, in the event that Carrie did not survive the testatrix, the sum was given to Edward; and if neither the testatrix'

brother nor his wife survived, then to be equally divided between the testatrix' brother George and sister Louise. Other paragraphs of the will gave the sum of $500 to each of the nephews and nieces of the testatrix. Then, after a bequest to her husband of her personal effects, follows the paragraph in question.

The property of the deceased had come to her through inheritances from various relatives. The whole plan of the will shows a settled purpose on her part to give the property which she had inherited to her brothers and sister, subject to the provisions of a life income to her husband and to Carrie, and less the relatively small bequests to Carrie and the nephews and nieces of the deceased. The two brothers and sister were living at the time the will was made and at the death of the testatrix. The vesting of the estate, therefore, in them as her natural heirs at the time of her death comports with the language of the provision in question, the general rule of law and the manifest plan of the testatrix as expressed in the other provisions of the will.

To the first question propounded, therefore, we answer that the natural heirs of Mary S. B. Rice, under paragraph eleven of her will, are her sister, Louise B. Parsons, and her brothers, Edward G. and George S. Babcock. As this disposes of the case, it is unnecessary to consider the other question propounded. No costs to be taxed in favor of either party in this court.

In this opinion MALTBIE, C. J., and BANKS, J., concurred.

HAINES, J. (dissenting). The majority opinion holds that this case is controlled by that of *Bridgeport City Trust Co.* v. *Shaw,* 115 Conn. 269, 161 Atl. 341, which followed *Close* v. *Benham,* 97 Conn. 102,

115 Atl. 626. Therein the rule was stated to be that where there was nothing in the language of the will or in the circumstances which indicated a clear intent to the contrary, a limitation over after a life estate, of a gift to a class, vests in point of right at the death of the testator. While the integrity of this rule is not open to question in this State, it is important to bear in mind the qualification contained in it. In the present case a study of the will in question and of the relevant circumstances, convinces me that a clear intent is shown which makes the rule inapplicable, as in *Union & New Haven Trust Co.* v. *Ackerman,* 114 Conn. 152, 158 Atl. 224. It seems to me the fundamental purpose of the testatrix as disclosed by her will, when read in its entirety and in connection with the stipulated facts, was to ensure the continuance of her property in the family blood.

She had received all of it as a family inheritance, a fact of which we cannot assume that she was unmindful. With the exception of a small legacy to her childless brother's wife, her gifts are all to blood relatives. Apparently for the reason that the brother Edward and his wife were without children, the gifts to them were made contingent, and if they lived to enjoy them, that enjoyment was for life only with remainder over to the other brother and the sister. On the other hand, the gifts to this brother and to her sister, both of whom had children who would naturally inherit the share of the legatee, were absolute gifts. The will, therefore, up to the disposition of the residue of the estate in the final clause, had ensured that all her property thus disposed of, should finally vest in blood relatives. In the residuary clause she created a trust, the income of which was for the benefit of her husband, but for his lifetime only, reserving the principal for the heirs of the blood. She

adds: "At his death, said residue is to be distributed among my natural heirs in accordance with the provisions of the Statute laws of this State." If the statutory heirs intended were those in being at the death of the testatrix, as the majority opinion holds, then the childless brother Edward was at once vested with one third of the residuary estate, and this result is certainly not consistent with the careful provision she had just made for a life interest for him with limitation over to the favored brother and the sister. Such a holding assumes that the testatrix thus desired to put the two brothers and the sister on an equal footing, while the other provisions of the will seem to me to conclusively negative such an intention.

Since the brothers and the sister were all deceased when the life estate terminated, the result of the majority ruling is to vest one of the three portions of this residuary estate as follows: One third in Stuart, surviving son of Louise, one sixth each in Josie and Marjorie, surviving daughters of George, and one third in the heirs of the widow of Edward, who are strangers to the blood. Thus the latter receive twice as much as either of the nieces of the testatrix. In the absence of clear evidence of a contrary intent, the natural desire of a testator must be held to give preference to blood relatives rather than to those who are unknown or strangers. Not only is there no evidence of such contrary intent here, but it seems to me that the plan of the testatrix disclosed by the will, is the natural one of giving preference to her own relatives by blood. I think that her intent can only be carried out by interpreting her words "my natural heirs" as meaning those who were such at the death of the life tenant. If this will were so construed, it would vest the entire residuum of this estate in the

heirs of the blood instead of putting a part of it into the hands of strangers.

For these reasons I am unable to concur in the majority view. I think the case is controlled by the principles enunciated in *Union & New Haven Trust Co.* v. *Ackerman, supra,* and supporting cases there cited.

In this opinion HINMAN, J., concurs.