HARTFORD-CONNECTICUT TRUST CO., EXTR.

vs.

HARTFORD-CONNECTICUT TRUST CO., TRUSTEE, ET ALS.

Superior Court          Hartford County          File #57242

MEMORANDUM FILED JULY 20, 1938.

Lucius F. Robinson, Jr., of Hartford, for the Appellant.

Ralph O. Wells, of Hartford, for the Appellees.

O'SULLIVAN, J.   This is an appeal from a decree of the Court of Probate for the District of Hartford, ordering distribution of the estate of Henry K. Morgan, deceased, relative to the remainder of a trust fund created for the benefit, during her life, of his only daughter, Emily Malbone Morgan.

The material part of the decree appealed from is as follows: "The Court therefore ascertains the distributees of the rest, residue and remainder of said trust fund to be William D. Morgan, a son of the decedent, who survived the decedent

but has since died, who took one-third (1/3) thereof; Henry K. Morgan, Jr., a son of the decedent, who survived the decedent but has since died, who took one-third (1/3) thereof; and the following grandchildren, children of George Brinley Morgan, a son of the decedent, who predeceased the decedent; Julia Tuck Firth of New Haven and Dorothy Brinley Hall of Boston, Mass.; Emily Morgan Hooker, who survived the decedent but has since died, and Denison Morgan, who survived the decedent but has since died, each of whom took one-twelfth (1/12) thereof."

The will was executed in 1890 and insofar as material, the third clause, upon which the decree was predicated, reads as follows: "Third. All the rest, residue and remainder of all my estate, of every kind and description, I give, devise and bequeath unto my children, George Brinley Morgan, William Denison Morgan, Henry K. Morgan, and Emily Malbone Morgan, the same to be equally divided between them. Provided however, that the share of my said daughter in my Estate, shall be held in trust for her by my said son Henry K. Morgan, and the income, rents and profits thereof, be by him, in quarterly or semi-annual payments, paid over to her, or for her sole use and benefit, and so much of the principal thereof as may be needed for her comfortable support for and during the term of her natural life, and I do expressly authorize and empower my said daughter to dispose of said principal fund, by the terms and provisions of any Last Will and Testament she may make, should she make no will, at her decease so much as may then remain of said Fund, shall go to my heirs at law."

The Probate Court held that the testator's heirs at law were to be determined as of his death and not as of that of the life tenant. It further held that distribution should be made per stirpes and not per capita. The parties are in accord with these rulings. The sole question at issue is whether or not the daughter, Emily Malbone Morgan, should have been included as one of the heirs at law, entitled to a share in the remainder of the trust fund created for her life use.

The testator died in 1911, and surviving him were three children, Henry, William, and Emily, and four grandchildren, children of his son, George, who had died in 1908. Shortly after the death of George, the testator had executed a third codicil, the provisions of which are claimed by the present distributees to be highly significant in determining the ques-

tion at issue.

By this codicil, George's share in the residue was given and bequeathed to his widow and children, of whom there were three daughters and one son. The material provisions follow: "I do hereby waive and annul the bequest in the third clause of my original will made to my son George Brinley Morgan now deceased, and in lieu thereof I do hereby give and bequeath, one-fourth part of the said rest residue and remainder of my estate to (George's) children in equal shares, viz Julia Tuck Firth, Dorothy Brinley Morgan, Emily Malbone Morgan and Denison Morgan. The shares bequeathed to said Julia, Dorothy and Emily shall be held in trust for them by William D. Morgan and Henry K. Morgan and Mary Delavan Morgan for and during the terms of their natural lives respectively and they are hereby authorized to dispose of the principal of said shares by the terms of any last will and testament they make, if undisposed of by the terms of any will they may make the principal thereof shall become in equal shares the estate of their brother and sisters."

In 1932, the defendant trust company duly qualified as successor trustee of the fund impressed with the life use of Emily Malbone Morgan. She died without issue in 1937, leaving a will but failing therein to exercise her power of appointment. At her death, the surviving descendants of Henry K. Morgan comprised the following, namely: three granddaughters (daughters of the son, George Brinley Morgan, deceased), to wit, Julia Tuck Morgan Firth, Dorothy Brinley Morgan Hall, and Emily Malbone Morgan Hooker; a granddaughter (daughter of Henry K. Morgan, Jr., a deceased son), to wit, Emily Brinley Morgan Crosby; and a granddaughter (daughter of William D. Morgan, a deceased son), to wit, Gabrielle D. Morgan.

Emily Malbone Morgan left an estate inventoried at $164,-514. At the date of her death, the fund of which she had had the life use was reasonably worth $61,630. Claims presented and allowed against her estate aggregated only $2,715.

The Probate Court decided that, by the language of his will in the light of the circumstances, the testator intended to exclude the life tenant and daughter, Emily, as an heir at law. With great deference to that distinguished Court, I am compelled to disagree with such a conclusion.

Although the circumstance that one who is a member, or

the sole member, of the class to which the limitation over has been made, is the first taker, may properly be taken into consideration in determining whether the testator has impliedly excluded such first taker from participating in the gift over, it is not, of itself, sufficient to prevent the first taker from so participating. *Bridgeport City Trust Co. vs. Shaw,* 115 Conn. 269; *Colonial Trust Co. vs. Brown,* 105 id. 261; *Thomas vs. Castle,* 76 id. 447; *Rand vs. Butler,* 48 id. 293; *Gold vs. Judson,* 21 id. 616; 13 A.L.R. 615, supplemented in 20 id. 356, 30 id. 915, and 61 id. 1011. An heir is not required to establish that he is included within his class. The burden of proving that he is to be eliminated rests on those who seek that end. *Gold vs. Judson, supra,* at page 625. And the burden is not sustained by facts supporting only inferences of speculation or metaphysical distinctions. The quality of proof must be such as to make manifest, not simply an intention on the testator's part to exclude, but an intention that is clear and decisive. *Thomas vs. Castle, supra,* at page 453. "In the absence of language or circumstances indicating a clear intention to the contrary, a life tenant who was also an heir cannot be excluded from his share in a remainder interest which was to be distributed according to the statutes of distribution." *Bridgeport-City Trust Co. vs. Shaw, supra,* headnote, page 269.

To determine what Henry K. Morgan meant when he used the words "heirs at law," requires an examination and analysis of the language he used, in the light of the circumstances surrounding and known to him at the time the will was executed in 1890. *Union & New Haven Trust Co. vs. Ackerman,* 114 Conn. 152, 157.

The contention of the probate distributees is this. By the third clause of his will, the testator disposed of his residuary estate. By the third codicil to his will he undertook to dispose of that portion of the estate which his recently deceased son, George, would have inherited, had he lived. A comparison of the third clause of the will and third codicil discloses, they claim, that the testator had certain definite fixed ideas.

1. He provided that the children should share equally.

2. He provided that the shares set aside for the male children should go to them outright.

3. He provided that the shares given to the female children

should be held in trust for them.

4. He provided that each female child should have an absolute power of appointment over the share held in trust for·her during her lifetime.

5. He provided for the contingency arising, should any female child fail to exercise her power of appointment.

Noting, then, these close and complete parallels between the will and codicil—all of which are quite obvious—they claim that by the expression "to my heirs at law", appearing .in the will, the testator meant "to my daughter's brothers", in order to round out and explain the general scheme which the testator had in mind.

But this conclusion is·a non sequitur. The important factor lies not in the similarities upon which their argument rests, but in the differences. And while in the codicil, the remainder goes to specified individuals, if the power of appointment is not exercised, in the will, it goes to a class. The word "heirs" in its primary sense, designates those who in the absence of a will are by law entitled to inherit the real estate of a deceased person.· *Perry vs. Bulkley,* 82 Conn. 158, 168. When the word is used in a will, its primary meaning is to be given to it unless it clearly appears that the testator used it in a different sense. *Nicoll vs. Irby,* 83 Conn. 530, 534. The language of the will, it seems to me, is as silent and inexpressive as a sun dial so far as pointing clearly and decisively to the proposition that the words "heirs at law" are not used in their primary meaning.

And if we examine the circumstances, we find nothing to change that opinion. The testator was a man with a codicil complex. On three occasions he altered his will by them. It must be presumed that in 1908 when he executed the last, he knew the language of the document differed from that of the will, where he attempted to dispose of a remainder made available through a failure to exercise a power of appointment. Had he, ·at that time, intended what is now claimed to have been in his mind, he could quite readily have completed the parallel to which attention has been called by providing that on the death of his daughter, Emily, the trust fund should go to her brothers or their representatives, should she neglect to exercise the power.

But reverting to 1890, when he executed the will, one finds in the latter part of the third clause a reference to a possible

husband of his daughter. There is nothing in the facts to indicate that at the time of his death, he believed that such an event as her marriage might not occur, and this may explain why it was he used different expressions in the will and codicil.

The present case is not of the class typified by *Close vs. Benham,* 97 Conn. 102; *Nicoll vs. Irby, supra;* and *Gross vs. Hartford-Connecticut Trust Co.,* 100 id. 332, which lay down the rule that whenever a life use is given, with remainder over to his issue, and, failing such, to the testator's heirs at law, it is presumed that the testator intended to exclude the life tenant from this class, unless a contrary intent is manifest in the language of the will.

It is an instance of a man doing what most men did in the nineties when women were not deemed capable of handling financial matters and whose capabilities were limited, as counsel suggests, to crocheting or strumming the harp. The testator surrendered to his daughter as complete ownership over her one-quarter interest as the spirit of those days permitted. He treated her, in terms of shares, on an equality with her brothers. He desired her to have complete control over the eventual disposition of her inheritance, by giving to her an absolute power of appointment.

Not only is there no clear and decisive proof that he intended to exclude his daughter as an heir—a situation which under our law would automatically include her as such—but on the contrary, it seems to me, the proof is ample that he wished her to share in the fund in question, and this intention I find as a fact.

Accordingly, the proper distributees are William D. Morgan, Henry K. Morgan, Jr., and Emily Malbone Morgan, each of whom took a one-fourth interest, and Julia Tuck Firth, Dorothy Brinley Hall, Emily Morgan Hooker, and Denison Morgan, each of whom took a one-sixteenth thereof.

The appeal is sustained and judgment may enter in conformity with this opinion.